UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN P. CURRY, | : | CASE NO. 3: 02 CV 1149 (PCD) |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| ALLAN S. GOODMAN, INC., | : | |
| Defendant. | : | October 27, 2003 |

**PLAINTIFF'S SUR-REPLY AND
SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff hereby responds to the arguments contained in Defendant's Reply Brief and supplements his Opposition to Defendant's Motion for Summary Judgment.

## SUR-REPLY

**I.   Plaintiff's claims are not "unsupported."**

1. Defendant is incorrect in its assertion that Plaintiff's assertion that the "Split Line" is a full time position at ASG is "unsupported." Plaintiff supports this assertion with his sworn affidavit (Ex. A) at paragraphs 20-24. This statement is made from Plaintiff's personal experience as a former employee of ASG, including his work on the Split Line.

2. Defendant is incorrect in its assertion that Plaintiff's claim that he "*has no difficulty reaching up to the high level or down to the low level and that reaching up and squatting down are within his medical restrictions*" is "unsupported."

1

(Reply, pp. 2-3) Plaintiff makes these assertions in paragraph 22 of his affidavit (Ex. A) and from his own personal knowledge. Furthermore, his treating physician, Dr. Charles Kime, closely supervised this work during the six (6) months that he performed it and indicated that his "functioning [was] good at 10 hours per day of light duty work." (Ex. T). Nowhere in this report does Dr. Kime address the issues of reaching or squatting. Defendant's claim in this regard is "unsupported." Finally, Dr. Kime has now approved all activities on the Split Line and occasional work on the Solid Line for Mr. Curry (See Ex. BB).

3. Defendant is incorrect in its assertion that Plaintiff's claim that "*if the lines are stocked properly, there should be no reason for him to leave the line during his shift*" is unsupported. (Reply, p. 3) Plaintiff supports this claim with his own affidavit, Ex. A, par. 22).

4. Defendant is incorrect in its assertion that Plaintiff's claim that "*it is only once a month that the split line workers are sent over to work on the solid line*" is "unsupported." First, Plaintiff's claim is that Split Line workers are sent to the Solid Line "[a]pproximately once a month,..." (Opposition Memo, page 5). Furthermore, Plaintiff supports this claim with his own affidavit (Ex. A, par. 24) and the deposition transcripts of Mr. Conroy (Ex. G, p. 55), Mr. O'Connor (Ex. E, p. 36) and Mr. Art Schreiber (Ex. P, 26).

5. Defendant is incorrect in its assertion that Plaintiff's claim that "*he performed the essential functions of the 'split line position'*" is "unsupported." Plaintiff supports this assertion with his own affidavit (Ex. A, par. 22 - 24).

6. Defendant is incorrect in its assertion that Ex. Y is "inadmissible." This letter to ASG asking to be returned to work is clearly relevant to show Plaintiff's efforts to mitigate his damages, a special defense pleaded by Defendant. (See Answer, Fourth Defense). Further, the Functional Capacity Evaluations are relevant as they have been reviewed and relied upon by Plaintiff's expert, Mr. Robb Wright and by his treating physician, Dr. Charles Kime. All reports relied upon by experts are admissible, even if they themselves are reports of non-testifying experts. *See United States v. Bramlet*, 820 F.2d 851, 856 (7th Cir. 1987) (allowing expert to draw conclusions from and rely on reports prepared by other medical professionals); *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) ("Rule 703 allows a testifying expert to rely on materials, including inadmissible hearsay, in forming the basis of his opinion"). Defendant's argument herein is a desperate attempt at hiding relevant evidence from this Court.

7. Defendant is incorrect in its assertion that Plaintiff's claim that he is "*substantially impaired in the major life activities of walking, bending, exercising, having sexual relations, traveling and sitting*" is unsupported and is based on "mere conjecture." To the contrary, Plaintiff supports this claim in his affidavit, (Ex. A, par. 7) and it is unchallenged by Defendant. It is elementary that a party moving for summary judgment cannot demonstrate that there is no genuine issue of material fact on an issue unless that party offers some evidence

thereon. Defendant has not done so. Its motion as to these claims should be denied.

## II. Defendant did not engage in the interactive process.

Defendant claims that it engaged in the interactive process. The only evidence it offers, however, is evidence of conduct prior to Plaintiff becoming a disabled person and requesting an accommodation. Plaintiff did not become a disabled person under the CFEPA or the ADA until he was diagnosed with a permanent restriction on March 7, 2001. On March 31, 2001, he placed his name on the bid sheet for the upcoming six (6) month night shift. This request to be assigned to the night shift for the next six months was his request for accommodation. Defendant ignored it and summarily discharged him. Defense counsel claims on behalf of his client that ASG "*communicated with Plaintiff*" on this topic. (Reply, page 6)[1]. This statement is false and is wholly unsupported by the record. Defendant never "*communicated with Plaintiff*." It called his union and told them to tell him that he was fired. This conduct constitutes a blatant disregard for the interactive process and Defendant's obligation under the law.

If by "communicat[ion]", Defendant is referring to its termination letter of April 17, 2001, then this can hardly be considered the interactive process. Instead, this letter simply informs Plaintiff that he is terminated. Defense counsel goes on in his Reply Memorandum to state that "*[a]t this time, neither Plaintiff nor the Union suggested any accommodation*." (Reply, page 6.) This is yet another false statement by defense counsel. Plaintiff, through his

---

[1]Defense counsel refers to Ex. K in support of this assertion. Defendant's Ex. K, i.e., the affidavit of David Heller, does not contain any allegation that Mr. Heller or any other member of ASG "communicated with Plaintiff." If there is some other piece of evidence on which Defense counsel relies, the undersigned hereby requests that it be provided to him immediately.

undersigned counsel, immediately responded to his termination letter, reminded ASG of its obligations under the law and requested to be assigned to the Split Line.  This request for accommodation was received by Richard Conroy of ASG who promptly ignored it without giving it any thought at all and without conducting any investigation as to whether the requested accommodation would have imposed an undue hardship.  (Depo of Conroy, Ex. G, pp. 115-16, 122-23) This testimony hardly supports defense counsel's claim that *"ASG did not fail to engage in the interactive process."*  (Reply, p. 6)

**III.    Plaintiff could then and can now perform the essential functions of the Split Line position.**

Plaintiff relies on the documentation supplied in his Opposition papers, dated September 19, 2003 and the latest report of Dr. Charles Kime, Ex. BB attached hereto.

**IV.    Plaintiff's retaliation claims are not Pre-Empted by *Garmon*.**

Plaintiff relies on his Opposition papers, dated September 19, 2003.

**SUPPLEMENT**

In addition to the evidence and arguments contained in his original Opposition, Plaintiff adds thereto the attached letter from his treating physician, Dr. Charles Kime (Exhibit BB ).  This letter was written in response to an inquiry from the undersigned (Exhibit CC).  This letter establishes that Mr. Curry can perform the essential functions of the Split Line job at Allan S. Goodman, Inc.  It is relevant to whether or not Defendant's discrimination caused his damages, i.e., backpay.  It is also relevant to whether or not reinstatement is appropriate, a remedy that Plaintiff claims in his complaint.

While Defendant has argued that the only time frame relevant to this case is "March - April 2001" (Defendant's Reply Brief, page 5), this statement is not true, especially where, as here, Defendant failed and refused to engage Plaintiff in the interactive process required by disability discrimination law.

Under this body of law, Defendant had an obligation on March 31, 2001, when Plaintiff asked to be accommodated by continuing his employment on the Split Line, to engage him in the interactive process before summarily discharging him. Defendant did not do this at all. Defendant instead terminated Plaintiff solely because it had recently learned that Plaintiff had recently been diagnosed with a "permanent" restriction.

If Defendant had engaged Plaintiff in the interactive process and worked with him to find a way to continue his employment, Plaintiff would have engaged Mr. Robb Wright back in April 2001. Mr. Wright would have ordered the Functional Capacity Evaluation (FCE) at that time. He also would have examined the work site, as he has now done, in order to find ergonomic ways to assist Mr. Curry and Defendant continue their working relationship. Further, he would have supplied Dr. Kime with his analysis at that time and sought his approval for Mr. Curry to continue on the Split Line.

Instead, because of Defendant's refusal to engage in the interactive process and its refusal to allow Mr. Wright to inspect the premises until September 2003, this entire process was delayed. Only now has it been possible to put enough information in front of Dr. Kime for him to fully and accurately assess Mr. Curry's work capacity. His latest report is one which Plaintiff asserts would have been issued back in 2001 and which would have allowed him to continue working for Defendant.

      Defendant should not be allowed to take advantage of its blatant refusal to engage Mr. Curry in the interactive process or its unreasonable refusal to allow Mr. Curry's ergonomic expert to inspect the workplace. It should not be allowed to argue that Dr. Kime's current medical assessment, based on the most recent and accurate data available, is irrelevant to the case. This evidence demonstrates that Mr. Curry was harmed by Defendant's refusal to engage in the interactive process and that he should never had been terminated.

      Accordingly, Defendant's Motion for Summary Judgment should be denied and the case should proceed to trial.

      PLAINTIFF, JOHN P. CURRY

By:_____
Richard E. Hayber,
Hayber & Pantuso, LLC
Fed. Bar No: ct11629
221 Main Street, Suite 400
Hartford, CT 06106
(860) 522-8888
Attorney for the Plaintiff

## **CERTIFICATION OF SERVICE**

      This is to certify that on this date, the foregoing document was hand delivered to all counsel and pro se parties of record including:

Glenn A. Duhl
Siegel, O'Connor, Zangari, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford CT 06103

                                                                _____
                                                                  Richard E. Hayber