UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED
JAN 9  12 26 PM '04
U.S. DISTRICT COURT
NEW HAVEN, CONN

| | |
|---|---|
| JOHN P. CURRY, | CASE NO. 3: 02 CV 1149 (PCD) |
| Plaintiff, | |
| v. | |
| ALLAN S. GOODMAN, INC., | |
| Defendant. | January 8, 2004 |

**PLAINTIFF'S SUPPLEMENT TO INITIAL RULE 26(a)(1) DISCLOSURES**

Plaintiff, through his undersigned counsel, hereby makes this supplement to his initial disclosures pursuant to Rule 26(a)(1). Plaintiff reserves the right to amend these responses throughout this litigation.

C.   A computation of any category of damages claimed by the disclosing party, making available for inspection or copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of the injuries suffered;

*Back pay:*

   **April 7, 2001 through July 15, 2002:**

   Mr. Curry was terminated on April 7, 2001 and despite his best efforts, did not earn any income from work up until July 15, 2002. At the time of his termination, he was earning $17 per hour, or approximately $680 per week. He would have been given a raise pursuant to the Union Contract[1] on October 1, 2001 to $17.30 per hour or

---

[1] See Attachment A; chart providing detail of Union raises and anticipate earnings at ASG as well as Curry's actual earnings from work to date.

1

approximately $692 per week. Therefore, in the sixty four (64) weeks since and up to July 15, 2002, he would have earned approximately $44,012.00. Accordingly, he claims back pay for that period in the amount of **$44,012.00.**

### July 15, 2002 through January 7, 2003:

Mr. Curry worked for Marcom Communications, Inc. during this period. He actually earned $11,270.00 from this job.[2] If he had not been fired by ASG, he would have earned $17,600.00 at ASG during this period, taking into account raises pursuant to the Union Contract. Over the twenty five (25) week period, he lost approximately $6,330.00. Accordingly he claims back pay for that period in the amount of **$6,330.00.**

### January 8, 2003 through December 1, 2003:

Mr. Curry was laid off on January 8, 2003 due to lack of work and was unable to obtain employment, despite his best efforts[3] until December 1, 2003. During those forty seven (47) weeks, he would have earned approximately $33,644.00, taking into consideration Union raises at ASG. Accordingly, he claims back pay for that period in the amount of **$33,644.00.**

### Employed December 1, 2003 through December 31, 2003:

Mr. Curry now works for the Town of West Hartford Plants and Facilities Department. He is working 20 hours a week, while he continues to make his best efforts to secure a full time job. Starting December 1, 2004, he earned $9.25 per hour or approximately $185 per week. By now at ASG, he would be earning approximately $18.30 per hour, or $732.00 per week. Accordingly, he claims back pay for that period in the amount of **$2,735.00.**

***Total Back Pay***..................................................................................................$86,721.00

---

[2] See Attachment B; copies of pay stubs.

[3] See Attachment C; copies of job search documentation.

*Front Pay:*

**Employed January 1, 2004 forward:**

Mr. Curry continues his employment at the Town of West Hartford Plants and Facilities Department. He is working 20 hours a week, while he continues to make his best efforts to secure a full time job. Starting January 1, 2004, he is earning $9.75 per hour or approximately $195 per week. By now at ASG, he should be earning approximately $18.30 per hour, or $732.00 per week. Therefore, Mr. Curry will continue to lose approximately $537 per week or $27,924 per year into the future until he finds a full time job. If it takes him one year to find full time employment, his front pay for one year will be **$27,924.00.** Front pay after that will depend upon the earnings from whatever full time job he finds.

*Insurance:*

Mr. Curry lost his health insurance from the Teamsters. That benefit is valued at approximately $574 per month under COBRA. Curry's damages to date amounts to **$16,072.**[4] This loss will continue into the future until such time as Mr. Curry obtains employment which replaces this benefit.

*Pension:*

Mr. Curry has lost the benefit of future contributions to his pension plan. The estimated value of that benefit is $291,000. The approximate present value of this sum of **$96,762.**[5]

*Emotional Distress:*

Mr. Curry claims the maximum available under the Civil Rights Act of 1991, or **$300,000**.

*Punitive Damages:*

Mr. Curry claims an amount sufficient to punish and deter.

---

[4]See Attachment D; Premium Computation Form

[5]See Attachment E; Pension Calculation, Chart reducing monies to current value, Current Interest Rate Chart

3

***Attorney's Fees:***

>Mr. Curry will owe one third of his recovery as an attorney's fee. Presently, his attorneys have spent approximately 300 hours on his case. At their normal hourly rate of $250 per hour, their hours amount to approximately **$75,000** in fees. They anticipate that they will work approximately an additional 200 hours to take this case through trial.

***Legal Expenses:***

>Mr. Curry has incurred legal expenses on his case.[6] Currently, these expenses total **$8,126.52** Mr. Curry claims this amount in addition to future legal fees and expenses. It is anticipated that additional expenses will be incurred including, but not limited to expert witness fees.

---

[6] See Attachment F; Chart recapping legal expenses to date

PLAINTIFF, JOHN P. CURRY

By: /s/ Richard E. Hayber
Richard E. Hayber,
Hayber & Pantuso, LLC
Fed. Bar No. ct11629
221 Main Street, Suite 400
Hartford, CT 06106
(860) 522-8888
Attorney for the Plaintiff

## CERTIFICATION OF SERVICE

This is to certify that on this date, the foregoing document was mailed to all counsel and pro se parties of record including:

Glenn A. Duhl
Siegel, O'Connor, Zangari, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford CT 06103

/s/ Richard E. Hayber
Richard E. Hayber

# JOHN CURRY DAMAGES ANALYSIS at PRESENT VALUE

All Info updated as of: 1/8/2004

## PROJECTED TEAMSTERS INCOME:

| Time Period: | # Weeks | Hours worked per wk | Hourly Pay Rate | total week | PERIOD TOTAL |
|---|---|---|---|---|---|
| 4/17/01- 10/1/01 | 23 | 40 | $17.00 | $680.00 | $15,640.00 |
| 10/1/01-7/15/02 | 41 | 40 | $17.30 | $692.00 | $28,372.00 |
| 7/15/02- 10/1/02 | 10 | 40 | $17.30 | $692.00 | $6,920.00 |
| 10/1/02-1/7/03 | 15 | 40 | $17.80 | $712.00 | $10,680.00 |
| 1/8/03-10/1/03 | 38 | 40 | $17.80 | $712.00 | $27,056.00 |
| 10/1/03-12/1/03 | 9 | 40 | $18.30 | $732.00 | $6,588.00 |
| 12/2/03-1/1/04 | 5 | 40 | $18.30 | $732.00 | $3,660.00 |
| 1/1/04-10/1/04 | 38 | 40 | $18.30 | $732.00 | $27,816.00 |
| 10/1/04-10/1/05 | 52 | 40 | $18.80 | $752.00 | $39,104.00 |
| 10/1/05-10/1/06 | 52 | 40 | $19.40 | $776.00 | $40,352.00 |
| 10/1/06-10/1/07 | 52 | 40 | $20.15 | $806.00 | $41,912.00 |
| | | | | | $248,100.00 |

## ACTUAL INCOME:

| Avg Hours worked each week | Hourly Pay Rate | Pay per week | TOTAL | LOSS |
|---|---|---|---|---|
| 0 | | 0 | $0.00 | $15,640.00 |
| 0 | | 0 | $0.00 | $28,372.00 |
| 40 | $14.00 | $560.00 | $5,600.00 | $1,320.00 |
| 27 | $14.00 | $378.00 | $5,670.00 | $5,010.00 |
| 0 | | 0 | 0 | $27,056.00 |
| 0 | | 0 | 0 | $6,588.00 |
| 20 | $9.25 | $185.00 | $925.00 | $2,735.00 |
| | | | | **$86,721.00** |

# AGREEMENT

# between

# ALLAN S. GOODMAN

# and

# TEAMSTERS LOCAL 671

## OCTOBER 1, 1998

## to

## SEPTEMBER 30, 2002

## ARTICLE XX

### WAGES

Combination employees, drivers, fork lift operators and helpers who are regular employees

(a) Wages shall be paid for not less than the following:

| 10/1/98 | 10/1/99 | 10/1/00 | 10/1/01 |
|---------|---------|---------|---------|
| $16.00  | $16.40  | $16.75  | $17.05  |

Experienced helpers on trucks (those that have worked 10 times) will receive nine dollars ($9.00) per hour.

Helpers on railroad cars (temporary helpers, replacement and summer inside help) shall receive eight dollars ($8.00) per hour.

Spare drivers who have a Class II License, work in the warehouse and drive shall receive 70% of the top driver rate.

2 (b) Employees on a night shift shall receive twenty-five cents ($.25) per hour over the regular rates as set forth in this Agreement. The night shift shall be any shift commencing on or after six o'clock (6:00 PM).

Regular full time employees not on seniority list before October 1, 1994, and have a class II license will earn an hourly wage equal to 70% of what a senior employee earns hourly. His hourly wage will increase in the following manner:

75% when the employee is put on the seniority list

80% after one (1) year on the seniority list

90% after eighteen (18) months on the seniority list

100% after two (2) years on the seniority list

22

# AGREEMENT

between

## ALLAN S. GOODMAN

and

## TEAMSTERS LOCAL 671

## OCTOBER 1, 2002

to

## SEPTEMBER 30, 2007

## ARTICLE XX

### WAGES

Combination employees, drivers, fork lift operators and helpers who are regular employees

(a) Wages shall be paid for not less than the following:

| 10/1/02 | 10/1/03 | 10/1/04 | 10/1/05 | 10/1/06 |
|---------|---------|---------|---------|---------|
| $17.55  | $18.05  | $18.55  | $19.15  | $19.90  |

Experienced helpers on trucks (those that have worked 10 times) will receive nine dollars ($9.00) per hour.

Helpers on railroad cars (temporary helpers, replacement and summer inside help) shall receive eight dollars ($8.00) per hour.

(b) **Employees hired after October 1, 2002 who possess a CDL will earn an hourly wage equal to 80% of what a senior employee earns for the first ninety (90) days of employment. After the first ninety days of employment, new employees with a CDL will earn an hourly wage equal to 90% of what a senior employee earns. After one year, new employees with a CDL will be entitled to the full hourly rate earned by senior employees.**

(c) Employees on a night shift shall receive twenty-five cents ($.25) per hour over the regular rates as set forth in this Agreement. The night shift shall be any shift commencing on or after six o'clock (6:00 PM).

## ARTICLE XXI

### SICK LEAVE AND PERSONAL DAYS

Four (4) personal days shall accrue after six (6) months of employment. All seniority employees who shall have been on the payroll for one year or more shall receive five (5) sick days leave with pay.

A bonus payment equal to eight (8) hours pay at straight time will be paid on April 1st to employees who do not use any sick time and do not have an injury or accident on the job from October 1st through March 30th of the current contract year.

A bonus payment equal to eight (8) hours pay at straight time will be paid on October 1st to employees who do not use any sick time and do not have an injury or accident on the job from April 1st through September 30th of the current contract year.

## ARTICLE XXII

### SUB-CONTRACTING

The employer agrees to refrain from using the service of any person who does not observe the wages, hours and conditions of employment established by Teamster Unions having jurisdiction over the types of services performed.