UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN P. CURRY | : |
| | : |
| vs. | : Case No. 3:02cv01149 (PCD) |
| | : |
| ALLAN S. GOODMAN, Inc. | : |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pursuant to Fed. R. Civ. P. 56, Defendant moves for summary judgment. For the reasons stated herein, Defendant's Motion [Doc. No. 43] is **granted**.

**A.   STANDARD OF REVIEW:**

In moving for Summary Judgment, Defendant has the burden of showing that there is no genuine issue of material fact on the issue of liability and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. That showing is assessed on the basis of the "pleadings, depositions, answers to interrogatories and admissions on file, together with [any] affidavits." Id.

If movant meets its burden, then it is the opposing party's obligation to produce evidence which demonstrates a genuine issue of material fact. Celotex Corp. v. Catrett 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Fletcher v. Atex, Inc. 68 F.3d 1451, 1456 (2d. Cir. 1995). Such opposition is not creative of such an issue if it is in the form of mere conclusory statements, conjecture or speculation. Opals on Ice v. Body Lines Inc., 320 F.3d 362, 370, n.3 (2d Cir. 2003). As discrimination involves motivation and is thus difficult to discern, caution is required in such cases. Chertkova v. Connecticut General Ins. Co., 92 F. 3d 81 (2d Cir. 1996); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 40 (2d Cir. 1994);

1

Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.), cert. denied 474 U.S. 829, 106 S. Ct. 91, 88 L. Ed. 2d 74 (1985).  In determining a Motion for Summary Judgment the facts must be construed in the light most favorable to the non moving part and must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505; 91 L. Ed. 2d 202 (1986).  Plaintiff's threshold burden, of presenting a prima facie case, is minimal.  Abdu v. Delta Air Lines, Inc., 239 F.3d 456, 467 (2d Cir. 2001).

B.    BACKGROUND:

Plaintiff's claim is in 6 counts: 1) Termination in violation of the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat § 46a-60(a)(1) and the Americans with Disabilities Act, 42 U.S.C. §12111 et seq (counts 1 and 4); 2) failure to provide reasonable accommodation under both CFEPA and ADA, (counts 2 and 5): and retaliation for filing complaints under CFEPA and ADA. Defendant moves for summary judgment on all counts.

The following factual recitation is derived from Defendant's Local Rule 56(a)(1) statement which, in the absence of contradiction by Plaintiff, is credited, and unchallenged facts asserted by Plaintiff in its Memorandum in Opposition to Motion for Summary Judgment.

Mr. Curry was employed as a truck driver by Defendant, delivering cases of wine and liquor weighing 50 to 70 pounds each. The work involved lifting, carrying and lowering the cases, all of which required bending and turning of the low back, a physically demanding job. Prior to August, 1998, Plaintiff experienced low back symptoms on two occasions, both of which were reported to have fully subsided. In August, 1998, while working, he experienced

back pain again and undertook treatment with an orthopedic surgeon, Dr. Kime, consisting of medication, physical therapy and two surgical procedures. He was not permitted to work due to continued back symptoms until August 8, 2000 when Dr. Kime permitted light duty, 4 hours per day with no lifting over 15 pounds, no repetitive movement, no prolonged sitting or standing and no walking for more than 30 minutes at a time. He was not projected for a full recovery but was later increased to a 10 hour workday subject to the foregoing restrictions and a 25 pound lifting limit which appears to be permanent. He has been evaluated for workers' compensation as having a back 30% permanent partial disability. Two independent medical exams confirmed his restriction, the extent of which was suggested be determined by a functional capacity evaluation ("FCE"). Plaintiff's FCE suggested his ability to lift up to 50 pounds on a frequent basis and his ability to do the partial order filling as described by Plaintiff. Defendant allegedly declined to have the evaluator discuss how the Plaintiff can perform that job. Plaintiff also claims that he is within the seniority to be eligible for one of the partial order jobs.

      Defendant has a policy with respect to light duty work which is regarded as temporary, subject to 60 day interval reevaluations pointed to return to full duty. Defendant has never had an employee on permanent light duty. In October, 2000, two employees on the night shift were on light duty. Neither how long that was the case nor how long that situation will continue is reflected in the record. In view of Plaintiff's apparent inability to return to full duty, in consultation with Plaintiff's union, the only light duty, a night shift fork lift operator, was noted as only temporary and in any event did not meet his doctor's limitations. During Dr. Kime's increased schedule, in late 2000, Plaintiff was permitted to return to work on a

light duty basis but on the understanding it was to be temporary and to lead to return to full duty work. It involved working as part of a crew of 10 which prepared customers' orders and loaded them on trucks for following day delivery. Part of the work involved limited lifting, as customers' orders did include some less than full case product which would be obtained from supply cartons by reaching and stretching and placing same in cases with other product such that essentially full cases would be delivered. The less than case product was obtained from storage shelves one-half of which required either high reaching or low bending on a continuous basis, resulting in the worker being required to stretch 25% or bend 25% of the time. As retrieval emptied supply cartons, a replacement carton must be obtained from the warehouse and brought to the order filling location by the person who exhausted product from a supply carton. Plaintiff notes that full cases can be filled a few bottles at a time from the warehouse and then the full case can be brought by hand truck to the order filling station. Each worker has a station in which orders are filled from a supply of product, in full or partial cases proximate to that station. When a worker on light duty works a station the job is not free from requirements kind of restrictions to which Plaintiff was subject. When that occurred there were two alternatives: the worker would be obliged to perform a task beyond his/her restrictions or another worker would be required to do the tasks that were beyond the restricted worker's limits. When a shift completed filling split product order, those doing that work would be required to assist in filling all orders, i.e. by full cases, so that at the shift's end all orders were filled and loaded on trucks for delivery the following day. Plaintiff claims this was an infrequent occurrence. The latter work would involve lifting beyond Plaintiff's 25 pound limit and repetitive bending. Plaintiff claims he could do the partial order work but

provides no contradiction of its entailing exceeding, in part, Dr. Kime's work limits. Only 12% of all order lifting were found to involve cases weighing less than 25 pounds.

By union contract workers were entitled to bid for their work stations and most select the partial product order filling. Thus, allowing a light duty worker to have that assignment could require accommodation of the collective bargaining agreement. Plaintiff claims that on the basis of seniority he was eligible to bid for a partial order job in March of 2001 but the job was given to less senior employees who bid fo the job. The partial product order work usually is finished first on a shift, particularly at peak times. The only work which does not exceed Plaintiff's limitations are operation of a forklift and general housekeeping, i.e. cleaning and sweeping.

The nature of the work in Defendant's warehouse, if Plaintiff were accommodated, would require substantial parts of his time bending, lifting, stretching, or exceeding his weight limits, or the performance of such by others leaving Plaintiff to engage in work within his limit but for only part of the shift. An example of the problem Plaintiff presented occurred when the night manager noted an "out of stock" notation on an order when he knew that product was in stock in the warehouse. Rather than get another case from the warehouse, Plaintiff asked another worker to retrieve a case for him but apparently failing such, he noted the product to be out of stock, leaving a customer's order incomplete. In violation of his lifting restriction, Plaintiff went to get a case himself, risking further injury, to the manager's dismay.

As of February, 2001, Dr. Kime increased Plaintiff's lifting capacity and extended his hours only to find that his symptoms were exacerbated, requiring narcotic pain killers. It was

then noted that he had reached maximum improvement and that it was unlikely Plaintiff would be able to return to unrestricted work. Dr. Kime imposed a permanent light duty requirement with no repetitive bending or lifting and a lifting limit of 25 pounds. The prognosis for further improvement was stated to be poor. Defendant then advised that no permanent light duty was available, further that the use of pain killers create a safety factor in working around equipment that his light duty employment would have to end and he should explore other employment. The union did not grieve the decision to end Plaintiff's employment. Plaintiff has not requested any particular accommodation that would permit his continued employment except to request that his light duty employment filling partial orders be continued. The compensation insurer referred Plaintiff for vocational rehabilitation which Plaintiff allegedly refused but contends he completed with the Connecticut Workers Compensation Department..

**III.   DISCUSSION:**

It is found that Plaintiff is not disabled and thus not within the protection of the ADA. Plaintiff originally was a truck driver in Defendant's employ when his injury was sustained. He makes no claim of an ability to perform that job but asserts that Defendant has a job, i.e. a partial order filling job on the midnight shift that would constitute a reasonable accommodation of his limited capacity and disability and is violating his rights by refusing to employ him in that job. Defendant asserts that he cannot fill that job, given his physical limitations, and the job, constituting light duty, is designated as a temporary job and it is not obliged to create a permanent job for him.

A disability exists when the person has an impairment which "substantially limits one

or more of the major activities of life" or is regarded as so impaired. 42 U.S.C. §12102(2). It is not, however, just an inability to perform one job, a specialized job or a job of his choice that qualifies as being substantially limited in the major life activity of working. Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001).

There is evidence that Plaintiff's permanent partial disability of the back limits his working ability which in turn limits his income generating capacity, a major activity of life. He is restricted from repeated normal motions of the back and particularly from full weight lifting. He is therefore precluded from all jobs at which heavy lifting and repetitive bending are required. That is an impairment but not the substantial impairment required for ADA protection as it involves simply a specialized job or a job of Plaintiff's choice. Id.

Plaintiff relies on Rochford v. Town of Cheshire, 979 F. Supp 116 (D. Conn. 1997) but the holding there is undercut by the principles underlying Giordano. So also is Plaintiff's reliance on Frix v. Florida Tile Industries, 970 F. Supp 1027, 1034 (N.D. Ga 1997). The argument that the impairment is substantial and that it is permanent are not determinative of whether the impairment substantially limited a major life activity, i.e precluded performance of "a variety of tasks central to most people's daily lives [and not just] tasks associated with [his] specific job." Toyota Mfg. Kentucky v. Williams, 534 U.S. 184, 198, 122 S. Ct. 681, 151 L. Ed. 2d 615 (2002). Plaintiff is not shown to be precluded from a broad class of jobs, i.e. those that do not require heavy lifting or repeated bending or like back movement. See Heilweil v. Mt. Sinai Hosp., 32 F.3d 718, 723 (2d Cir. 1995); Colwell v. Suffolk County Police Department, 158 F.3d 635 (2d Cir. 1998).

Once within the ADA as disabled, Plaintiff's claim, and Defendant's liability, is

measured by an entitlement to reasonable accommodation for his disability unless such accommodation is shown to impose an undue hardship. Toyota Mfg., 534 U.S. at 193. Plaintiff's only claim of disability is his limited work capacity, lifting more than lighter weights, repeated bending and like back movements.  As he is above found not substantially impaired, it is unnecessary to discuss Defendant's added grounds under ADA and CFEPA, including the question of Plaintiff's right to reasonable accommodation, a right that accrues only upon establishment of a disability bringing one within the protection of ADA. His claim to the partial order job as a reasonable accommodation of his limitation is not reached..

Independent of his disability claims, in counts 3 and 6 Plaintiff claims his termination was retaliatory because of his union grievance, invoking, in part, Conn.Gen.Stat.§ 46a-60(a)(4).  Defendant asserts that such a claim is preempted by the National Labor Relations Act, 29 U.S.C. §§ 157, 158(a)(1) and 160(a). These set forth union activity rights, prohibition of employer infringement and the enforcement authority vested in the NLRB. Together they vest exclusive jurisdiction over such matters in the NLRB. San Diego Trades Council v. Garmon, 359 U.S. 236, 245, 79 S. Ct. 773, 3 L. Ed. 2d 775 (1959).  The claim essentially asserts an NLRA violation, despite the nomenclature characterizing it and it thus remains within the preemption of the NLRA and the jurisdiction of the NLRB. Id. at 244-45.  Plaintiff responds by invoking principles applicable to discrimination cases but the argument is misplaced. The retaliation claim asserts a response to his filing a grievance under a collective bargaining agreement.  That asserts a response to his invoking a procedure created by a union negotiated labor contract.  Discrimination is not involved and while a suit alleging discrimination would not be regarded as an NLRA violation and not preempted, the retaliation

claim is not such a suit. His reliance on <u>Alexander v. Gardner-Denver Co.</u>, 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1978) is unavailing. Reference to him as "handicapped" was the basis for the grievance. Counts 3 and 6 pertain to the action taken against him, i.e. retaliation, for filing the grievance. He does not complain of a violation of his rights by being so addressed but of conduct constituting retaliation for his invoking the grievance procedure, a labor matter. His reliance on <u>American Postal Workers Union v. U.S. Postal Service</u>, 766 F.2d 715, 720 (2d Cir. 1985), is misplaced. There, because of a statute pertinent to the Postal Service, 39 U.S.C.1208(b), vesting District Courts with jurisdiction over suits for violation of Postal Service labor contracts, neither on preemption nor jurisdiction bases were District Courts ousted of jurisdiction over a labor dispute.

The claim that the state law retaliation claim should be preserved is without merit. There is nothing about the asserted retaliation that is of such general significance in the world of state legal affairs as distinguishes the case from labor matters generally. The claim would be identical whether brought in court or before the NLRB. The focus would be on an asserted interference with negotiated labor contract rights. In either forum the state's citizens' rights are protected. In arguing that local interest in discrimination is significant, Plaintiff fails to note that the retaliation claim is not based on discrimination but on retaliation which would impede labor contract rights. Plaintiff cites no case holding that a retaliation claim based on a grievance filing is not exclusively an NLRB matter.

## IV.   CONCLUSION:

For the reasons stated herein Defendant's Motion for Summary Judgment [Doc. No. 43] is **granted**. The clerk shall close the file.

9

SO ORDERED:

Dated at New Haven, Connecticut this 25th day of February, 2004.

/s/
PETER C. DORSEY
UNITED STATES DISTRICT JUDGE
