UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN P. CURRY,<br>          Plaintiff, | CASE NO. 3: 02 CV 1149 (PCD) |
| vs. | |
| ALLAN S. GOODMAN, INC., | |
|           Defendant. | March 5, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO RECONSIDER COURT'S RULING AS TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND, IN THE
ALTERNATIVE, TO REMAND STATE LAW CLAIMS TO CONNECTICUT
SUPERIOR COURT**

**I.    BACKGROUND AND INTRODUCTION**

Plaintiff brought this suit in June 2002 in Connecticut Superior Court and alleged wrongful termination in violation of Connecticut's Fair Employment Practices Act (CFEPA) and the federal Americans with Disabilities Act (ADA). Defendant removed the case to this court because of the federal claims.

In August 2003, Defendant filed its Motion for Summary Judgment. In it, it purportedly moved for summary judgment in its favor "on each of the six counts." In its Memorandum of Law, however, Defendant offered no argument or analysis as to Plaintiff's First and Second Counts, i.e, his counts under CFEPA for Defendant's disparate treatment of him and its failure to

1

accommodate his disability. Defendant's brief contained only references to the ADA, including its heading on page 20:

"B. PLAINTIFF IS NOT A QUALIFIED INDIVIDUAL WITH A DISABILITY UNDER THE ADA."

There is no corresponding section in Defendant's brief making reference to CFEPA. There is no citation to any Connecticut opinion discussing this issue under CFEPA. There is no specific reference to Plaintiff's First and Second Counts. For these reasons, the undersigned did not brief the issue of whether or not Plaintiff is entitled to protection under CFEPA.

In its Ruling on Defendant's Motion for Summary Judgment, this court took up the only issue presented by the briefs, i.e., the question of whether or not Plaintiff's condition qualified him for protection under the ADA. This court ruled that Plaintiff's 30% permanent partial disability of his back did not meet this standard. In so doing, this Court refused to apply its own holding in *Rochford v. Town of Cheshire*, 979 F. Supp. 116 (D. Conn. 1997) in which a man with a 10% permanent impairment of his back was held to be a disabled person under the ADA. This Court held that the Plaintiff in *Rochford* was disabled because he was "substantially limited from working because he is excluded from heavy labor jobs." This Court wrote that the "holding there [in *Rochford*] is undercut by the principles underlying *Giordano[ v. City of New York*, 274 F.3d 740, 747 (2d Cir. 2001)]."

This court then wrote:

> "As he is above found not substantially impaired, it is unnecessary to discuss Defendant's added grounds under ADA ***and CFEPA***, including the question of Plaintiff's right to reasonable accommodation, a right that accrues only upon establishment of a disability bringing one within the protection of ADA. His claim to

2

> the partial order job as a reasonable accommodation on his limitation is not reached."

(Ruling, page 8, emphasis added).

Accordingly, the Court ruled that Plaintiff was not entitled to protection under CFEPA because he did not meet the statutory definition of disabled under the ADA. This ruling misapplies the law of CFEPA, which this Court, the Second Circuit and the state courts of Connecticut have held has a much different and much easier standard to meet, i.e., whether Plaintiff's condition is "chronic." This ruling most likely was made because of the way that the parties briefed the case, without any specific reference to or arguments about CFEPA. In fact, Summary Judgment should not have been entered on Plaintiff's counts under CFEPA because Plaintiff submitted substantial evidence that he meets all the elements of both counts. Likewise, Summary Judgment should not have entered on the ADA counts because he has presented substantial evidence to show that he is disqualified from two different categories of jobs, such that the Second Circuit's opinion in *Giordano* does not, in fact, support this Court's analysis.

## II. ARGUMENT

### A. SUMMARY JUDGMENT SHOULD BE REVERSED AS TO PLAINTIFF'S CFEPA COUNTS

*1. Plaintiff Submitted Evidence, and Defendant Does not Dispute, That Plaintiff is a "Disabled" Person Under CFEPA*

The crux of this Court's opinion in granting Defendant's Motion for Summary Judgment was that Plaintiff had not established that he was a disabled person under the ADA. See Ruling on Defendant's Motion for Summary Judgment at 6-8. The standard for such a finding is whether a person has a "a physical or mental impairment that substantially limits one or more of

3

the major life activities ..." 42 U.S.C. § 12102(2). This federal standard, however, is different from the standard used under Connecticut law. As Judge Goettel recently held:

> Unlike many of the other state discrimination statutes, the disability discrimination provisions of CFEPA ***do not mirror the federal ADA***. To be "disabled" under Connecticut law is different than being "disabled" under the ADA. *Shaw v. Greenwich Anesthesiology Assocs.*, 137 F. Supp.2d 48, 65 (D. Conn.2001). "Physically disabled" is defined under the CFEPA, Conn. Gen. Stat. § 46a-51(15), as "any individual who has any ***chronic physical handicap, infirmity or impairment***, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." Although not specifically set forth in the statute, perceived disabilities have been held by the Connecticut courts to constitute a "disability" under the CFEPA. *Shaw*, 137 F.Supp.2d at 66, n. 22; *Ann Howard's Apricots Rest. Inc. v. Comm'n on Human Rights & Opportunities*, 237 Conn. 209, 224-25, 676 A.2d 844 (1996). ***The CFEPA has also been interpreted to require an employer to reasonably accommodate disabled employees.*** *Trimachi v. Conn. Workers' Comp. Comm.*, No. CV 970403037, 2000 WL 872451 (Conn. Super. 2000).

*Hill v. Pfizer, Inc.*, 266 F. Supp.2d 352, 364 (2003) (emphasis added).

In *Shaw*, one of the cases relied upon by Judge Goettel, this Court dismissed a plaintiff's ADA claim on summary judgment after finding that her arthritis did not substantially limit a major life activity, see id. at 54, but refused to grant summary judgment with respect to the plaintiff's CFEPA claim, ruling that "[t]o be 'disabled' under Connecticut law is different from being 'disabled' under the ADA." *Id.* at 65. The plaintiff in *Shaw* suffered from "severe arthritis in her hands, elbows, knees, and feet. . . . Plaintiff asserts that she has pain and decreased motion as well as swelling in her joints. She suffers from pain and paresthesia while standing. Her condition caused her to be placed on full-time disability for about six months." *Id.* at 65.

4

This ruling was cited favorably by the Second Circuit Court of Appeals in *Beason v. United Technologies Corporation*, 337 F.3d 271 (2003), when it held that it was reversible error to apply the tougher ADA standard to claims under CFEPA:

> The district court in *Shaw* cited as authority *Venclauskas v. State*, No. CV 960471879, 1997 Conn. Super. LEXIS 1643, 1997 WL 375654 (Conn. Super. May 14, 1997). In *Venclauskas* a Connecticut Superior Court rejected a defendant's assertion that a CFEPA plaintiff, "by analogy to federal anti-discrimination statutes," could not be considered disabled within the meaning of the CFEPA. *Id.* at *1. Instead the state court held that, without reference to whether plaintiff's physical impairment substantially limited a major life activity, plaintiff had alleged sufficient facts to support a finding that he was disabled within the meaning of Connecticut state law. Id. at *3, *6-*7. At least two other Connecticut Superior Courts have similarly ruled plaintiffs to be disabled pursuant to the CFEPA without considering or mentioning whether those plaintiffs were substantially limited in a major life activity. See *Gilman Bros. Co. v. Conn. Comm'n on Human Rights & Opportunities*, No. CV 950536075, 1997 Conn. Super. LEXIS 1311, *8-*10, 1997 WL 275578 (Conn. Super. May 13, 1997); *Tordonato v. Colt's Mfg. Co.*, No. CV 970481610S, 2000 Conn. Super. LEXIS 3615, *13-*14, 2000 WL 33124392 (Conn. Super. Oct. 26, 2000).
>
> Moreover, the Connecticut Commission on Human Rights and Opportunities, which enforces the CFEPA in administrative proceedings, has recognized the difference between Connecticut and federal law regarding the definition of disability. See, e.g., CHRO ex rel. Kowalczyk v. City of New Britain, CHRO No. 9810482, at *25-*26 (Mar. 15, 2002) ("The definitions of 'disability' in the ADA and [C]FEPA-- and the interpretive case law -- differ significantly . . . . [C]FEPA, unlike the ADA, does not require the complainant to prove that she is substantially limited in a major life activity."); *CHRO ex rel. Saksena v. State*, CHRO No. 9940089, at *10 (Aug. 9, 2001) (same); *CHRO ex rel. Secondo v. Hous. Auth.*, CHRO No. 9710713, at *24 (June 9, 2000) ("Although the complainant is not disabled under the ADA . . . the broader definition of disability under state law yields a different result than the federal definition.").
>
> We note, in addition, that the New York Human Rights Law, N.Y. Exec. Law § 290 et seq., a state anti-discrimination statute that, like the CFEPA, lacks any mention of the ADA's "substantially limit a major life activity" language in its definition of disability, see id. § 292(21), has been interpreted by the New York Court of Appeals as providing relief to a broader range of impairments than does the ADA. See *State Div. of Human Rights v. Xerox Corp.*, 65 N.Y.2d 213,

5

218-19, 491 N.Y.S.2d 106, 480 N.E.2d 695 (1985); see also *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 155 (2d Cir.1998) (discussing the standard for finding a protected disability under New York law). In sum, the trial court – by relying on the ADA's standard for determining whether a person is disabled within the meaning of that state statute – committed an error of law that resulted in its improperly dismissing Beason's CFEPA claim.

*Id.* 337 F.3d at 278-79.

Accordingly, a plaintiff is protected by CFEPA if he shows that he suffers from a chronic impairment. While the language of CFEPA does not contain an expressed definition of "chronic," the Courts of this State are a source of further definition of the term "chronic:"

> Courts have turned to commonly approved resource materials to define the term "chronic." Black's Law Dictionary defines the term to mean "of long duration or characterized by slowly progressive symptoms; deep seated or obstinate, or threatening a long continuance, distinguished from acute." Black's Law Dictionary at 241-42 (6th ed.1990). Several courts have adopted this definition in analyzing claims under the Act. See, e.g., *Shaw v. Greenwich Anesthesiology Assoc.*, 137 F. Supp. 48, 65 (D. Conn. 2001); *Gilman Bros. v. Connecticut Commission on Human Rights and Opportunities*, 1997 WL 275578 at * 5 (Conn. Super. May 13, 1997). See also The American Heritage Dictionary of the English Language (1976) at 240 (chronic defined as of long duration); Roget's Thesaurus (4th ed.1977) (chronic is long lasting; persistent; of long duration; long term).

*Caruso v. Siemens Business Communications, Inc.*, 2004 WL 235365, *6 (D. Conn. 2004).[1] See also, *Gilman Bros.*, 1997 WL 275578 at *4 (defining 'chronic' as "with reference to diseases of long duration, or characterized by slowly progressive symptoms; deep seated or obstinate, or threatening a long continuance; distinguished from acute."); *Shaw*, 137 F. Supp. 2d at 64.

Applying this definition, Connecticut's trial courts have held that persons who suffer from the less severe condition of carpal tunnel syndrome are disabled under Connecticut law:

---

[1]  Copies of all unreported decisions cited are attached to this memorandum.

See *Farahani v. University of Connecticut*, Superior Court, Judicial District of Hartford, Docket No. CV 01 0809033, 2002 WL 1904373 (July 9, 2002, Wagner, J.T.R.) (finding carpal tunnel syndrome qualifies as a physical disability under § 46a-51); *Infante v. Thomas*, Superior Court, Judicial District of New Haven, Docket No. CV 97 0395925, 2001 WL 822217 (June 20, 2001, Moran, J.) (holding carpal tunnel syndrome is a physical disability for purposes of the ADA and § 46a-60); *Gillman Brothers Co., supra,* (upholding CHRO decision that chronic carpal tunnel syndrome is a physical disability under § 46a-51(15)); *General Dynamics Corp. v. Commission on Human Rights and Opportunities*, Superior Court, Judicial District of New London, Docket No. CV 92 524412, 1993 WL 307763 (August 9, 1993, Hurley, J.) (upholding a CHRO decision in which, at trial, parties agreed carpal tunnel syndrome is a disability according to § 46a-51(15)).

In his opposition to Defendant's Motion for Summary Judgment, Plaintiff presented sufficient evidence to allow a jury to conclude that he has a chronic impairment, and thus is a disabled person under CFEPA. Plaintiff presented evidence that he has a 30% permanent partial impairment to his lumbar spine. Exhibit A (Affidavit of John Curry) at ¶ 40; Exhibit T (Report of Charles B. Kime, M.D.). He also has a permanent lifting restriction. Exhibit A at ¶¶ 40, 48; Exhibit T; Exhibit Y (Reports of C. DiPasquale, MS, PT, OCS, CHT and Steven E. Selden, M.D.). Indeed, these facts are admitted by Defendant. Answer, ¶ 20; Defendant's Local Rule 56(c)(1) Statement, ¶ 80. Accordingly, pursuant to the applicable standard under CFEPA as set forth in *Shaw, Gilman Bros., Venclauskas* and the other cases cited above, Plaintiff has established that he is "disabled," and thus qualifies for protection under CFEPA. He has pleaded, and Defendant did not challenge in its Motion for Summary Judgment, two separate and distinct causes of action under CFEPA, disparate treatment and failure to accommodate.

7

Summary Judgment should not have entered on either of these claims for the reasons stated in the Court's Ruling, i.e., because Plaintiff failed to meet the standard of "disabled" under the ADA. Accordingly, the Court should reconsider and reverse its ruling as to the First and Second Counts of Plaintiff's Complaint.

> 2. *Summary Judgment Should not Have Entered on Plaintiff's First Count, Alleging Disparate Treatment in Violation of CFEPA, Because CFEPA Expressly Recognizes Disparate Treatment Claims*

Disparate treatment is a claim explicitly recognized under CFEPA  Connecticut General Statutes Section 46a-60(a) provides, in relevant part:

> It shall be a discriminatory practice in violation of this section: (1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or ***to discriminate against such individual in compensation or in terms, conditions or privileges of employment because of the individual's . . . physical disability*** including, but not limited to, blindness. . . .

The elements of this cause of action are (1) that Plaintiff is a member of a protected class, and (2) "an impermissible factor played a 'motivating' or 'substantial' role in the employment decision." *Levy v. Commission on Human Rights and Opportunities*, 236 Conn. 96, 106, 671 A.2d 349 (1996). Plaintiff has alleged and offered evidence that, if credited by the jury, meets both of these elements. As noted above, it is undisputed that he has a chronic condition, a 30% permanent partial impairment of his lumbar spine and a permanent lifting restriction. Thus, he has a "physical disability" under CFEPA which places him in a protected class. Plaintiff also has submitted evidence that, if credited by the jury, would allow a finding that his physical disability played a motivating or substantial role in the decision to terminate his employment. This includes evidence that Plaintiff was fired shortly after his employer received the report from his

8

physician indicating that his back injury was permanent, and that Defendant has a "zero tolerance" policy of refusing to allow any employee to return to work unless he or she is released for full duty. See, e.g., Exhibit A at ¶ 44; Exhibit D (Defendant's Policy on Work-Related Injuries) at ¶ 7; Exhibit G (Deposition of Richard Conroy) at 73-76. Indeed, Richard Conroy, Defendant's Warehouse Manager, testified that pursuant to Defendant's policy, it would terminate an employee who could not perform 100 percent of his duties even if the only limitation on his activities was that the employee needed an additional one minute break during the course of the workday. Exhibit G at 75-76.

This evidence alone, if credited by the jury, makes out a prima facie case of disparate treatment disability discrimination under CFEPA. Accordingly, the Court should reconsider and reverse its ruling and deny Summary Judgment as to the First Count.

> 3. *Summary Judgment Should not Have Entered on Plaintiff's Second Count, Alleging a Failure to Accommodate in Violation of CFEPA, Because Connecticut Courts Have Recognized a Claim for Failure to Accommodate Under CFEPA*

While CFEPA does not expressly provide for a duty to accommodate, it is a claim recognized as arising by implication. See *Trimachi, supra*; *Hill v. Pfizer, Inc.*, 266 F. Supp.2d 352, 364 (2003) (holding that CFEPA provides a right to a reasonable accommodation). "Implicit in Connecticut's prohibition against discrimination, based on physical or mental hardship, is a duty of reasonable accommodation. Without such implication, the protections of the statute should be largely meaningless. By the very nature of the classification, otherwise qualified disabled persons may require some sort of an accommodation in order to work."

*Trimachi*, 2000 WL 872451 at *8, quoting *Frederick v. Bridgeport Hospital*, CHRO No. 8720151 (Oct. 16, 1992).

The Superior Court case, *Ezikovich v. Commission on Human Rights and Opportunities*, 1998 WL 258182, (Conn. Super.), Docket No. CV 970567872 (May 11, 1998, DiPentima, J.), involved a complainant's appeal of the Commission's finding that a respondent employer had provided the complainant with a reasonable accommodation to her disability of chronic fatigue syndrome.

> The CHRO did not misapply or misunderstand the law of reasonable accommodation. . . . the CHRO found that a fixed start work schedule was a reasonable accommodation and rejected the plaintiff's claim that reasonable accommodation was an at will, "work when you can" schedule. The conclusions of the CHRO as to reasonable accommodations follow the applicable law.

*Id.*

In another complainant's appeal, *Kalanquin v. Commission on Human Rights and Opportunities*, 1998 WL 57767 (Conn. Super.), Docket No. CV 970567909, (February 3, 1998, DiPentima, J.), the Superior Court also acknowledged the existence of an employer's duty under state law to reasonably accommodate by finding that this particular employer was exempted from it "because the plaintiff was totally disabled." This same holding appears in *Silhouette Optical, Ltd. v. Commission on Human Rights and Opportunities*, (Conn. Super.), 10 Conn.L.Rptr. 599, (January 27, 1994, Maloney, J.). There, the complaint alleged a violation of General Statutes § 46a-60(a)(1) and the Commission's hearing officer held, "the [respondent] had a duty to investigate reasonable accommodations for [complainant], but did not do so." The Respondent employer appealed to the Superior Court. Judge Maloney referred first to the duty to make

reasonable accommodations under federal law, and concluded by affirming the hearing officer's decision that the respondent had a duty to make reasonable accommodations.

Accordingly, Plaintiff's Second Count is not a claim that depends on being a "disabled person" under the ADA. There is a separate, state law right to a reasonable accommodation when an employee meets the standard of a "chronic impairment" under CFEPA. Plaintiff has presented evidence that, if credited by the jury, would allow a finding not only that he has a "physical disability" under CFEPA (see above), but also that Defendant failed in its duty to provide Plaintiff with a reasonable accommodation of his physical disability. See, e.g., Exhibit A at ¶¶ 44-46, 48; Exhibit G at 64-66, 112-116, 122-123. The Court therefore should not have entered Summary Judgment as to the Second Count simply because it found that the ADA standard of "disability" had not been met. Accordingly, the Court should reconsider and reverse its ruling and deny Summary Judgment as to the Second Count.

### B. SUMMARY JUDGMENT SHOULD BE REVERSED AS TO PLAINTIFF'S ADA COUNTS BECAUSE THERE IS A MATERIAL QUESTION OF FACT AS TO WHETHER HIS DISQUALIFICATION FROM TWO DIFFERENT CATEGORIES OF JOBS QUALIFIES HIM AS "DISABLED" UNDER THE ADA

The primary reason given by the Court in granting Summary Judgment as to Plaintiff's ADA counts is that it found that Plaintiff only was precluded from one class of jobs, those that require heavy lifting and repetitive bending. See Ruling on Defendant's Motion for Summary Judgment at 7. The Court then declined to follow its prior ruling in *Rochford*, 979 F. Supp. 116, stating that its' holding was undercut by the principles underlying *Giordano*, 274 F.3d 740. *Giordano* and the principles underlying it do not undercut the application of *Rochford* to this case, however, because Plaintiff has presented sufficient evidence from which a jury can

11

conclude that he is disabled from not one but two broad classes of jobs, "Heavy Work" and "Very Heavy Work."

In *Giordano*, the Second Circuit ruled that a police officer was not "regarded as disabled" because he only showed that he was "disabled from police or other investigative or security jobs that involve a substantial risk of physical confrontation." *Id.* at 749. The Second Circuit did not consider this limitation to be such that the plaintiff was significantly restricted in the ability to perform a "broad class of jobs," the standard set forth in 29 C.F.R. Pt. 1630.2(j)(3)(i):

> With respect to the major life activity of working . . . [t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

The same "broad class of jobs" rule applies and Plaintiff has presented evidence from which the jury can conclude that he has met it. He has supplied evidence that he is excluded from two broad categories of jobs: Heavy Work and Very Heavy Work. See Exhibit A at ¶¶ 39-40, 48; Exhibit T; Exhibit Y; Exhibit Z. These job categories are much broader than the very narrow category of "police or other investigative or security jobs that involve a substantial risk of physical confrontation" that was relied upon by the Second Circuit in *Giordano*. Indeed, Plaintiff has gone further than the plaintiff in *Rochford*, who only presented evidence that he was impaired from one class of jobs: "Based on this evidence, a reasonable jury could find that plaintiff was excluded from all heavy labor jobs and thus was substantially limited in his ability to work." *Rochford*, 979 F. Supp. at 120.

This Court also relied upon *Heilwell v. Mt. Sinai Hospital*, 32 F.3d 718 (2d Cir. 1995) and *Colwell v. Suffolk County Police Department*, 158 F.3d 635 (2d Cir. 1998) to support the conclusion that Plaintiff was not precluded from a broad class of jobs. These cases do not, however, support the Court's conclusion that Plaintiff does not have a "disability" under the ADA. In *Heilwell*, the only evidence presented on this question was that "peculiar fumes within the blood bank exacerbated plaintiff's asthma, not the general environment of the hospital." 32 F.3d at 723.[2] Significantly, the plaintiff in *Heilwell* presented no medical evidence to support her assertion. *Id.* In this case, Plaintiff submitted reports from two orthopedic surgeons (Dr. Kime, Exhibit T, and Dr. Selden, Exhibit Y) and a Functional Capacity Evaluation (Exhibit Y) which support his claim that he is disabled from both "Very Heavy Work" and "Heavy Work." A reasonable jury could infer from this evidence that, in fact, Plaintiff was excluded from these two broad classes of jobs, and thus has a "disability" under the ADA.

Similarly, the plaintiffs in *Colwell* did not present evidence at trial that their limitations on working were substantial. For example, two of the plaintiffs (Colwell and Abrams) only showed that they had limited difficulties, e.g., standing at attention for any period of time, standing in one spot, sitting for long periods, and lifting very heavy objects. 158 F.3d at 644. The other plaintiff (Ellinger) only presented evidence that his doctor had forbade him from working late tours or rotating shifts and instructed him to avoid stress and confrontation. *Id.* at 644-45. These limitations were not so severe as to disqualify the plaintiffs from anything but a narrow range of jobs. *Id.*

---

[2] While *Heilwell* was a claim under the Rehabilitation Act, that Act uses the same standard as the ADA – a physical or mental impairment which substantially limits one or more major life activity. Compare 29 U.S.C. § 706(8)(B) with 42 U.S.C. §12102(A).

In this case, Plaintiff has met the burden of presenting evidence from which a reasonable jury could conclude that he was, in fact, excluded from two broad categories of jobs, "Heavy work" and "Very Heavy Work," so that, in fact, the limitation on his ability to perform the major life activity of work was substantially limited. The Court should not have granted summary judgment as to his claims under the ADA. Accordingly, the Court should reconsider and reverse its ruling and deny Summary Judgment as to the Third through Sixth Counts.

### C. SHOULD THE COURT NOT REVERSE ITS RULING AS TO THE ADA COUNTS, IT STILL SHOULD REVERSE AS TO THE CFEPA COUNTS AND REMAND THE CASE TO THE CONNECTICUT SUPERIOR COURT

Even if the Court determines that its decision as to the ADA counts should not be reversed, it should permit the Connecticut Superior Court to determine the viability of Plaintiff's CFEPA counts. While, as noted above, this Court should vacate that part of its Ruling granting Summary Judgment as to the CFEPA claims, it need not conduct an analysis of the viability of the CFEPA claims. Those issues are issues of State law and are more properly decided by a judge of the Connecticut Superior Court.

Pursuant to 28 U.S.C. §§ 1367(a), a District Court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Under 28 U.S.C. §§ 1367(c), however, a District Courts may decline to exercise supplemental jurisdiction over a state law claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it

14

has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. As noted by the Second Circuit in *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003), the proper scope of the District Court's discretion is not boundless.

The United States Supreme Court has stated that, when all federal law claims are eliminated from a case before trial, the balance of factors to be considered under the doctrine of pendent jurisdiction, including judicial economy, convenience, fairness and comity, usually point toward declining to exercise jurisdiction over the remaining state law claims. *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). See also *Valencia*, 316 F.3d at 305. While the Supreme Court intended this standard not only to clarify, but also to broaden, the scope of federal pendent jurisdiction, it also has drawn a distinction between the power of a federal court to hear state law claims and the discretionary exercise of that power. *Id.* The Supreme Court has noted that a District Court's determination of state law claims may conflict with the principle of comity to the States and with the promotion of justice between the litigating parties. *Carnegie-Mellon University v. Cohill*, 484 U.S. at 349-50, 108 S.Ct. 614, 98 L.Ed.2d 720. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer- footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

This is especially true in this case. Plaintiff initially filed his case in the Connecticut Superior Court and Defendant removed it based upon federal question jurisdiction. The validity of Plaintiff's state law claims, while having been addressed by both the CHRO and the Connecticut Superior Court, has not yet been addressed by an appellate tribunal in Connecticut.

In addition, in its Motion for Summary Judgment Defendant neither provided this Court with any analysis of Plaintiff's state law claims nor asked the Court to undertake such an analysis. Accordingly, Plaintiff has not yet had the opportunity to provide any analysis in defense of those claims. Under these circumstances, judicial economy, convenience, fairness and comity all weigh in favor of declining to exercise supplemental jurisdiction ad remanding these claims to the Connecticut Superior Court.

## III. CONCLUSION

Summary Judgment should not have entered on Plaintiff's claims under CFEPA for disparate treatment and failure to accommodate simply because this court ruled that he was not disabled under the ADA. Plaintiff has presented undisputed evidence that he suffers from a "chronic" impairment and therefore is disabled under Connecticut law. He thus has stated two viable causes of action which should proceed. Plaintiff also has provided sufficient evidence from which a reasonable jury could conclude that he is disabled under the ADA, so that Summary Judgment should not have entered on his ADA claims. If the Court does not reverse its ruling as to the ADA claims, it should not exercise supplemental jurisdiction over Plaintiffs state law claims, and thus should remand them to the Connecticut Superior Court for additional proceedings.

PLAINTIFF JOHN P. CURRY

By: _____
Richard E. Hayber,
Hayber & Pantuso, LLC
Fed. Bar No: ct11629
221 Main Street, Suite 400
Hartford, CT 06106
(860) 522-8888
Attorney for the Plaintiff

**CERTIFICATION OF SERVICE**

      This is to certify that on this date, the foregoing document was mailed to all counsel and pro se parties of record including:

Glenn A. Duhl
Siegel, O'Connor, Zangari, O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford CT 06103

_____
Richard E. Hayber