### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN P. CURRY, | : | CASE NO. 3: 02 CV 1149 (PCD) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ALLAN S. GOODMAN, INC., | : | |
| | : | |
| Defendant. | : | MARCH 26, 2004 |
| | : | |

### DEFENDANT'S MEMORANDUM IN OPPOSITION
### TO PLAINTIFF'S MOTION TO RECONSIDER
### RULING GRANTING SUMMARY JUDGMENT

Allan S. Goodman, Inc. ("ASG") hereby opposes the motion for reconsideration filed by Plaintiff, its former employee, John P. Curry

### I.    STATEMENT OF THE CASE.

In June 2002, Plaintiff commenced a civil action in the Connecticut Superior Court alleging in the first and fourth counts of the complaint that ASG terminated his employment because he was disabled, in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1) and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq*., respectively.  Plaintiff alleged in the second and fifth counts of the complaint that ASG failed to accommodate his disability in violation of CFEPA and the ADA, respectively.  Plaintiff alleged in the third and sixth counts of the complaint that ASG terminated him in retaliation for filing a union grievance in violation of CFEPA and the ADA, respectively.  ASG removed the case to this Court.

In August 2003, ASG moved for Summary Judgment on each of the six counts of the complaint, which was granted in its entirety on February 25, 2004. On March 5,

2004, Plaintiff filed his Motion to Reconsider.   Plaintiff's motion principally seeks a second bite at the apple on the Court's dismissal of the ADA claims and further suggests, erroneously, that ASG and the Court did not properly address Plaintiff's CFEPA claims.

## II.   LAW AND ARGUMENT.

### A.   Standard Of Review.

The standard for granting a motion for reconsideration is strict.  *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Such a motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Id.*  Consequently, the function of "a motion for reconsideration is to present the court with an opportunity to correct 'manifest errors of law or fact or to consider newly discovered evidence....'"  *LoSacco v. City of Middletown*, 822 F.Supp. 870, 876-77 (D. Conn. 1993) (citations omitted), *aff'd*, 33 F.3d 50 (2d Cir. 1994).  A "motion for reconsideration may not be used to plug gaps in an original argument or to argue in the alternative once a decision has been made."  *Horsehead Resource Dev. Co., Inc. v. B.U.S. Envtl. Serv., Inc.*, 928 F.Supp. 287, 289 (S.D.N.Y. 1996) (internal citations and quotations omitted).  Furthermore, a "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."  *Shrader*, 70 F.3d. at 257.

It is well established that a motion for reconsideration must adhere to stringent standards.  A motion for reconsideration is not simply a "second bite at the apple" for a party dissatisfied with a court's ruling.  *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136,

144 (2d Cir. 1998). A motion for reconsideration is also "not a vehicle for relitigating old issues, presenting the case under new theories, [or] securing a rehearing on the merits..." *Id*. Thus, a party moving for reconsideration

> must demonstrate that newly discovered facts exist that require consideration, that there has been an intervening change in the law, or that the court has overlooked and thus failed to consider an aspect of the law presented by the [moving party] which, if left unredressed, would result in clear error or cause manifest injustice.

*Metro. Entm't Co., Inc. v. Koplik*, 25 F.Supp. 2d 367, 368 (D.Conn. 1998), *citing Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).

### B.    The Court Properly Found That Plaintiff Was Not Disabled Under The ADA.

The Court committed no error in its determination that Plaintiff was not disabled at the time of his employment termination and, accordingly, there is no reason to reconsider and reverse the granting of summary judgment dismissing Plaintiff's ADA claims. In the Ruling on page 7, this court found that "Plaintiff is not shown to be precluded from a broad class of jobs, i.e. those that do not require heavy lifting or repeated bending or like back movement." *See* Ruling at 7, *citing Heilwell v. Mt. Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir. 1995)[1]; *Colwell v. Suffolk County Police Department*, 158 F.3d 635 (2d Cir. 1998). In Plaintiff's motion, he seeks to draw a line between "heavy work" and "very heavy work," so as to exclude himself from two broad categories of jobs and, by that, come within the purview of the ADA. Plaintiff's argument is misplaced: one class of jobs, such as the warehouse position at issue here, may have varying physical exertion requirements. *See, e.g., Heckler v. Campbell*, 461 U.S. 458,

---

[1] The Second Circuit also recognized in *Heilweil* that, "[a]n impairment that disqualifies a person from only a narrow range of jobs is not considered a substantially limiting one." *Heilweil*, 32 F.3d at 723, *citing Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249, n. 3 (6th Cir. 1985)."

462 n.3, 103 S.Ct. 1952 (1983), *citing* 20 C.F.R. § 404.1567. As this Court held, the holdings in *Heilweil* and *Colwell* suggest otherwise. As the Court properly ruled, "[t]hat is an impairment but not the substantial impairment required for ADA protection as it involves simply a specialized job or a job of Plaintiff's choice." Ruling at 7.

Further, Plaintiff's repeated reference to how a jury might react is of no significance as this never was a jury case. Indeed, Plaintiff has long waived any claim for a jury.

Beyond this, Plaintiff's reliance on his Functional Capacity Evaluation ("FCE") is misplaced. In *Caruso v. Siemens Business Communications, Inc.*, 2004 WL 235365, *6 (D.Conn. 2004) (copy attached as Exhibit A), Judge Burns made it clear that "[t]he determination of whether a person is [disabled] should be made at the time of the discriminatory action," not years after. Plaintiff's employment termination was April 9, 2001. His FCE was not conducted until June 17, 2003, more than two years after his termination and, moreover, unilaterally after discovery closed. Plaintiff's condition at the time of the termination decision is what governs – not his condition years after. *Id.*

### C.    The Court May Properly Find That Plaintiff Was Not Disabled Under Both The ADA And CFEPA.

ASG does not dispute that the disability discrimination provisions of CFEPA do not mirror the federal ADA.

> To be "disabled under Connecticut law is different than being "disabled" under the ADA. *Shaw v. Greenwich Anesthesiology Assocs.*, 137 F.Supp. 2d 48, 65 (D. Conn. 2001). "Physically disabled" is defined under CFEPA, Conn. Gen. Stat. 46a-51(15), as "any individual who has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device."

4

*Hill v. Pfizer, Inc.*, 266 F.Supp. 2d 352, 364 (2003). While the definitions of "disability" under the ADA and CFEPA differ ever so slightly, the courts have not held that the threshold for determining whether one is "physically disabled" under CFEPA versus the ADA is a weaker standard.

In defining "physically disabled," the Connecticut legislature included as examples, "epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device." *See* Conn. Gen. Stat. § 46a-51(15) and § 1-1f(b). The use of these examples "may be deemed to be the sorts of handicaps which the General Assembly considered." *Tello v. Bell*, 1997 WL 867716, *2 (Conn. Super. Dec. 18, 1997) (copy attached as Exhibit B.) These types of disabilities noted by the Connecticut legislature reflect disabilities that impact or compromise an individual in all facets of life; they are not limited to affecting an individual's ability to perform certain job functions.

In *Tello*, the Connecticut Superior Court interpreted the language of Conn. Gen. Stat. § 1-1f(b), which defines "physically disabled" by the same language as in Conn. Gen. Stat. § 46a-51(15). In *Tello*, the tenant who suffered a lower back condition with a 12% permanent disability claimed that he was physically disabled, and thus protected from eviction by virtue of Conn. Gen. Stat. § 47a-23c(a). Despite the permanency of the tenant's injury and lower back pain, the Court held that "[a]n objective reading of the reports results in the conclusion that the reported back pain and the reports were apparently believed by the physicians, but there has been no significant neurological involvement." *Tello*, 1997 WL 867716, *1. The Court recognized that "physically disabled" means something more than a potential permanent condition or pain:

"although [tenant] may experience lower back pain, there is at this time no objective reason to suggest that [his] ability to pursue most of the ordinary activities of life has been significantly compromised." *Id.*

Here, while impacted in his ability to perform certain aspects of his job, no ordinary activity of Plaintiff's life has been significantly compromised. Plaintiff readily admitted that he has been able to attend to his own personal hygiene, including bathing, as well as walking and swimming. (*See* Exhibit S at 42, Exhibit D at P9222, P0227 attached to ASG's Motion for Summary Judgment.) In granting Summary Judgment, this Court recognized that Plaintiff's back injury did not significantly impact him in his ordinary life activities: "Plaintiff's only claim of disability is his limited work capacity, lifting more than lighter weights, repeated bending and like back movements." Ruling at p. 8. Because Plaintiff's disability claim was a limited or restricted work capacity, this Court appropriately determined that he was not "physically disabled" under either CFEPA or ADA:

> [a]s he is above found not substantially impaired, it is unnecessary to discuss Defendant's added grounds under ADA and CFEPA, including the question of Plaintiff's right to reasonable accommodation...

*Id.*

Under Plaintiff's view of what the Connecticut legislature intended when it defined "physically disabled," any person with a permanent pain or condition, no matter how small, would be considered "physically disabled." This is not what CFEPA is intended to protect. *See Tello*, 1997 WL 867716, at *2, n.3 ("If any physical malady qualified one as a member of the protected class, then a significant percentage of the population perhaps a majority of the people over forty, would enjoy protected status.") To be disabled under CFEPA means more than an employee being unable to perform certain

6

job functions.  An individual having lower back pain with a doctor-imposed permanent light duty requirement with no repetitive bending or lifting and a lifting limit of 25 pounds is not tantamount to "a chronic physical handicap, infirmity or impairment." *See Tello*, 1997 WL 867716, at \*1-2.  Here, as in *Tello*, Plaintiff's condition "simply does not rise to the level of magnitude which the legislature has determined to protect."  *Id.*

### D.    Even If Plaintiff Was Disabled, He Could Not Perform His Job With Or Without Reasonable Accommodation.

In ASG's Memorandum in Support of its Motion for Summary Judgment, it demonstrated that even if the Court were to find Plaintiff disabled under either ADA or CFEPA, he still could not perform his job with or without reasonable accommodation. *See* Section C of ASG's Mem. In Supp. of Motion for Summary Judgment at 24-32.  In granting Summary Judgment on all counts, this Court determined that Plaintiff was not disabled.  *See* Ruling at 8.  The Court did not address whether Plaintiff could perform the temporary light duty job but, in any event, that issue is not dispositive of the material issue because the light duty job was only temporary – it was not his regular job.  As to his regular job, this Court recognized that "Plaintiff provides no contradiction of [his job duties] entailing exceeding, in part, Dr. Kime's work limits.  Only 12% of all order lifting were found to involve cases weighing less than 25 pounds."  Ruling at 4-5.

For Plaintiff to be entitled to protection, he must be able to perform the essential functions of the job, with or without reasonable accommodation.  *See, e.g., Reeves v. Johnson Controls World Servs, Inc.,* 140 F.3d 144 149-50 (2d. Cir. 1998).  "Reasonable accommodation" does not mean elimination of the job's essential functions.  *Gilbert v. Frank*, 949 F.2d 637, 644 (2d. Cir. 1991); *Jenkins v. Northwood Rehab and Extended Care*, 2003 WL 21241483, at 4 (N.D.N.Y. May 28, 2003) (copy attached as Exhibit Y to

7

ASG's Mem. In Supp. of Motion for Summary Judgment) (ADA does not require an employer to eliminate or relocate essential functions of a position, as such exceeds reasonable accommodation).

The inquiry into a position's essential functions is not intended to second-guess the employer or to require the employer to lower its company standards. *Goldring v. Sillery Mayer & Partners*, 111 F.Supp. 2d. 55, 61 (D. Conn. 1999) (Dorsey, U.S.D.J.). In fact, "[a] Court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position. *D'Amico v. City of New York*, 132 F.3d. 145, 151 (2d. Cir. 1998); *Ongsiaks v. City of New York*, 199 F.Supp. 2d. 180, 186 (S.D.N.Y. 2002).

Pursuant to his own treating physician's report dated March 7, 2001, Plaintiff was at maximum medical improvement. Dr. Kime placed Plaintiff on a "permanent light duty restriction for no repetitive bending or lifting, no lifting greater than 25 pounds." *See* report from Dr. Kime attached as Exhibit D, pg. 224 to ASG's Motion for Summary Judgment. The sole accommodation Plaintiff requested, if any, was that, while earning the same salary as his co-workers he should be entitled to be placed on permanent light duty work and he should be entitled to have another employee retrieve full cases for him on a permanent basis. (*See* Affidavit of David Heller, attached as Exhibit K to ASG's Motion for Summary Judgment.). This would only aid in the performance of one essential job function – retrieving stock to complete orders. Plaintiff would still be unable to perform the remaining essential functions of the warehouse night shift position: repetitive bending to retrieve items from the low shelf and repetitive lifting/reaching to retrieve stock from the high shelf, as well as the other duties that are

expected of all employees, namely loading cases which exceed the 25-pound restriction on the solid line and loading cases onto trucks. The chart set forth in Section 11.C.i of ASG's Motion for Summary Judgment demonstrates that Plaintiff's essential job duties are inconsistent with his permanent medical restrictions. This Court recognized this. *See* Ruling at 4-5.

After ASG learned that Plaintiff's treating physician determined that he had permanent restrictions that prevented him from being able to perform the essential functions of his job, ASG explained to the Union and Plaintiff that it did not have a permanent light duty position. Plaintiff argues that ASG should make his light duty position permanent, pay him his regular pay, but relieve him from performing the essential functions of the job as others similarly situated. *See* Exhibit S to ASG Motion for Summary Judgment at 76. There is simply no legal basis for such a demand. In this regard, it is clear that an employer need not make a temporary light duty position permanent. "'Reasonable accommodation' does not mean elimination of any of the job's essential functions." *Bonner v. New York State Elec. & Gas Corp.*, 195 F.Supp. 2d 429, 436 (W.D.N.Y. 2002), *citing Gilbert*, 942 F.2d 637, 642 (internal quotation marks omitted).

This Court has held that an employee's request that his light duty job be made permanent is *not* a reasonable accommodation. *Rochford v. Town of Cheshire*, 929 F.Supp. 116, 121 (D.Conn. 1997) (Dorsey, U.S.D.J.); *see also Parnahay v. United Parcel Serv., Inc.,* 20 Fed Appx. 53 at 3 (2d Cir. 2001) (copy attached as Exhibit Z to ASG's Motion for Summary Judgment) (temporary light duty jobs to which plaintiff was assigned were not actual jobs; plaintiff cannot meaningfully make a claim for such jobs

to be made permanent as a reasonable accommodation; *Wernick v. Federal Reserve Bank of New York*, 91 F.3d 379, 384 (2d Cir. 1995); *Brown v. Triboro Coach Corp.,* 153 F. Supp. 2d, 172 186 n. 8 (E.D.N.Y. 2001) (the ADA has not been interpreted to require employers to convert light duty positions into permanent positions for disabled employees).

Moreover, "an employer is not required to find alternative employment for an employee who cannot perform his job unless the employer normally provides such alternative employment under its existing policies." *Adriani v. Commission on Human Rights & Opportunities*, 220 Conn. 307, 320 n.12 (1991). ASG's policy has been to only provide temporary light duty work. It has never provided an employee with a permanent light duty position. "Light duty status is intended to be a temporary, transitional situation." *See* Allan S. Goodman, Inc. Warehouse Manual attached as Exhibit G to ASG's Motion for Summary Judgment.

> Reassignment of a disabled employee to a vacant light-duty position is well established as a reasonable accommodation under the ADA. An employer is not, however, obligated to create a new light-duty position for a disabled employee or make permanent previously temporary light-duty positions. *See, e.g., Dalton v. Subaru-Isuzu Auto, Inc.*, 141 F.3d 667, 680 (7th Cir. 1998), (concluding that an automobile manufacturer was not required to accommodate permanently disabled employees via assignment to a program that consisted of light-duty positions set aside for temporarily disabled employees)…

*King v. Town of Wallkill,* 2004 WL 291560 (S.D.N.Y. Feb. 13, 2004) (copy attached as Exhibit C). In *King*, the Court held that the "plaintiff's request for a permanent light-duty assignment fails as a matter of law, because the record clearly demonstrates that these positions did not exist…" *Id.* at 9. Likewise, in this case, Plaintiff's request for a light-

duty assignment fails as a matter of law because permanent light-duty positions do not exist at ASG.

To establish a viable claim, Plaintiff must be able to perform the essential functions of his job. The essential functions of the warehouse position consisted of spending a majority of the night engaging in repetitive bending and reaching, as well as lifting and carrying full cases to restock the shelves, helping the solid line load full cases and loading trucks with full cases. Again, the Court found this to be undisputed. *See* Ruling at 4-5. The Court further ruled:

> The nature of the work in Defendant's warehouse, if Plaintiff were accommodated, would require substantial parts of his time bending, lifting, stretching, or exceeding his weight limits, or the performance of such by others leaving Plaintiff to engage in work within his limit but for only part of the shift.

Ruling at 5. As this is undisputed, there is no good cause to reverse this finding. Accordingly, based on Plaintiff's physician-imposed permanent restrictions (which ASG could not ignore), there was no way for him to perform his job with or without a reasonable accommodation. For this same reason, should the Court find Plaintiff "disabled" under CFEPA (which it should not), Plaintiff's claim for failure to accommodate should be dismissed on summary judgment as he could not perform the essential functions of his job with or without reasonable accommodation.

### III.   CONCLUSION.

For all the foregoing reasons, Plaintiff's motion for reconsideration should be denied or, alternatively, upon reconsideration, the Ruling granting ASG's motion for summary judgment in its entirety should stand.

11

ALLAN S. GOODMAN, INC.

By: _____

Glenn A. Duhl ct03644
Siegel, O'Connor, Zangari
   O'Donnell & Beck, P.C.
150 Trumbull Street
Hartford, CT 06103
Tel.: (860) 727-8900
Fax: (860) 527-5131
gduhl@siegeloconnor.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Motion to Reconsider Court's Order Entering Summary In Favor of Defendant has been served upon counsel for Plaintiff, John P. Curry, Richard E. Hayber, Esq. and Anthony J. Pantuso, III, Hayber & Pantuso, LLC, 221 Main Street, Suite 400, Hartford, CT 06106, by first class mail, postage prepaid, this 26th day of March, 2004.

_____
Glenn A. Duhl

## Exhibits To Memorandum In Opposition To Motion For Reconsideration

A.    *Caruso v. Siemens Business Communications, Inc.*, 2004 WL 235365 (D.Conn. 2004).

B.    *Tello v. Bell*, 1997 WL 867716 (Conn. Super. Dec. 18, 1997).

C.    *King v. Town of Wallkill,* 2004 WL 291560 (S.D.N.Y. Feb. 13, 2004).