# Westlaw.

Not Reported in A.2d
(Cite as: 1997 WL 867716 (Conn.Super.))

Page 1

Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.

Rafael C. TELLO,
v.
Frank BELL.

No. SPN 27461.

Dec. 18, 1997.

Memorandum of Decision

BEACH.

**\*1** I find the second count of the complaint proven, that is, that the defendant once had the right or privilege to occupy the premises but no longer has such right or privilege. In light of this court's decision in the prior case between the parties, *Tello v. Bell,* No. SPN 26862, this finding is more or less inevitable.

The only significant issue presented at trial is whether Mr. Bell's physical condition effectively constitutes a defense. Section 47a-23c(b)(1) prohibits the eviction of tenants who fall within the categories defined in § 47a-23c(a), except for reasons and circumstances not applicable to this case. The only classification arguably applicable to the defendant appears in § 47a-23c(a)(1)(C), which includes in the protected class those who are "physically disabled, as defined in section 1-1f, but only if such disability can be expected to result in death or to last for a continuous period of at least twelve months." Section 1-1f(b), in turn, defines a physically disabled person as one who "has any chronic physical handicap, infirmity or impairment, whether congenital or resulting from bodily injury, organic processes or changes or from illness, including, but not limited to, epilepsy, deafness or hearing impairment or reliance on a wheelchair or other remedial appliance or device."

In support of his claim, Mr. Bell, over the plaintiff's objection, submitted medical reports from two physicians, an internist and a neurosurgeon, which document a lower back condition. It is fair to conclude from the evidence presented that Mr. Bell was involved in a bus accident in December 1992. According to one of the physicians, this accident aggravated a preexisting condition, and a 12% permanent partial disability is reported by the internist, Murray Wellner. The far more objective and detailed reports by the neurosurgeon, Dr. Arnold Rossi, suggest that there has been a disc rupture at L5-S1, but, most significantly, no neurological deficits are reported and, though the patient reports musculoskeletal pain, whatever leg pain which was reported did not follow any dermotomal distribution. This would again tend to negate any compromise of the nervous system.
Thus it appears that although disc tissue may have been disturbed, there is no evidence that the disturbance has seriously impinged on nerves. An objective reading of the reports results in the conclusion that the patient reported back pain, and the reports were apparently believed by the physicians, but that there has been no significant neurological involvement. There is also nothing in the medical reports regarding ability to work. I find, then, that although Mr. Bell may experience lower back pain, there is at this time no objective reason to suggest that Mr. Bell's ability to pursue most of the ordinary activities of life has been significantly compromised.

The nonmedical evidence is perhaps more persuasive. Mr. Bell testified that, while he was employed in a sense by Mr. Tello, he performed a wide variety of physical labor, including work on a roof and working on gutters, retiling floors, installing carpeting, cutting grass, vacuuming the premises, and the like. [FN1] In the two-week period prior to the hearing in this case, Mr. Bell worked at a construction site performing physical labor. This court observed Mr. Bell and, though he reported to be in some discomfort, there was no

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



Not Reported in A.2d
(Cite as: 1997 WL 867716 (Conn.Super.))

Page 2

apparent manifestation of any disability.

> FN1. Once Mr. Bell realized the plaintiff's purpose in this line of questioning, he qualified his answers by saying that he experienced pain as a result of these activities.

*2 Section 1-1f of the General Statutes defines physical disability rather generally and then includes as examples epilepsy, deafness, and *reliance on a wheelchair or other remedial appliance or device.* Although the examples provided in the statute are specifically designated to be noninclusive, the examples may be deemed to be the sorts of handicaps which the General Assembly considered. The defendant's condition, as objectively described by Dr. Rossi, [FN2] simply does not rise to the level of magnitude which the legislature has determined to protect. [FN3]

> FN2. As noted above, I place relatively little reliance on the report of Dr. Wellner.

> FN3. If *any* physical malady qualified one as a member of the protected class, then a significant percentage of the population, perhaps a majority of the people over forty, would enjoy protected status.

In sum, Mr. Bell's condition appears to have changed very little from March of 1996, when Judge DiPentima denied the same defense raised by Mr. Bell in *City of New Britain v. Bell,* No. SPN 23016; she held that the evidence presented of lower back pain did not satisfy the requirements of the statute. I do not find that the situation has changed significantly since that time, and I hold, as well, that the elements of the defense have not been satisfied by the evidence.

Judgment may enter for the plaintiff.

1997 WL 867716 (Conn.Super.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works