# Westlaw.

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 1

United States District Court,
S.D. New York.

Kenneth KING, Plaintiff,
v.
TOWN OF WALLKILL, Robert Henneman,
Former Acting Police Chief, Town of
Wallkill, Thomas Nosworthy, Former Supervisor,
Town of Wallkill, John Beairsto,
Former Acting Police Chief, Town of Wallkill,
Robert Hertman, Police Chief,
Town of Wallkill, and John F. Ward, Supervisor,
Town of Wallkill, sued in their
individual capacities, Defendants.

No. 02 CIV.8817 WCC.

Feb. 13, 2004.

**Background:** Former police officer sued town, present and former acting police chiefs, and present and former supervisors, bringing failure to accommodate and retaliation claims under Americans with Disabilities Act (ADA) and New York State Human Rights Law (NYHRL), and claim under § 1983 for taking without just compensation in violation of Fifth and Fourteenth Amendments. Defendants counterclaimed for recoupment of wrongfully received disability benefits and moved for summary judgment.

**Holdings:** The District Court, William C. Connor, Senior District Judge, held that:
(1) genuine issue of material fact, as to whether officer was "qualified individual with a disability," precluded summary judgment on that element of officer's prima facie case under ADA and NYHRL;
(2) officer's proposed accommodation of light-duty assignment was not reasonable insofar as no such positions existed in department;
(3) officer established prima facie case of retaliation under ADA and NYHRL;
(4) individual defendants could not be held liable under ADA;
(5) present and former acting police chiefs and present and former town supervisors actually participated in actions giving rise to police officer's claims of retaliation and thus could be held personally liable under NYHRL;
(6) officer was liable for repayment of benefits he wrongfully received for injury sustained during course of employment;
(7) letter relied on by town to prove amount of damages was inadmissible hearsay; and
(8) genuine issue of material fact existed as to amount owed by officer to town, precluding summary judgment on damages portion of town's counterclaim.

Motion granted in part and denied in part.

**[1] Civil Rights ⇐1217**
78k1217 Most Cited Cases

To establish prima facie case of employment discrimination under ADA, employee must show (1) his employer is subject to ADA, (2) he was disabled within meaning of ADA, (3) he was otherwise qualified to perform essential functions of his job, with or without reasonable accommodation, and (4) he suffered adverse employment action because of his disability. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

**[2] Civil Rights ⇐1217**
78k1217 Most Cited Cases

**[2] Civil Rights ⇐1552**
78k1552 Most Cited Cases

**[2] Civil Rights ⇐1744**
78k1744 Most Cited Cases

There is no difference between the quantum or elements of proof required by ADA and New York State Human Rights Law (NYHRL). Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.; N.Y.McKinney's Executive Law § 296.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works



2004 WL 291560                                                                  Page 2
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

**[3] Civil Rights ⚖═1218(4)**
78k1218(4) Most Cited Cases

Employee who is incapable of regular attendance is not qualified to perform essential functions of given position and thus is not "qualified individual with a disability" under ADA. Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8).

**[4] Civil Rights ⚖═1218(4)**
78k1218(4) Most Cited Cases

Whether employee is "qualified individual with a disability" under ADA is dependent on that employee's condition at time of alleged adverse employment action. Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8).

**[5] Civil Rights ⚖═1218(4)**
78k1218(4) Most Cited Cases

While applications for disability retirement do not necessarily preclude employee from establishing prima facie case under ADA, employee who has filed for disability retirement must introduce sufficient evidence to demonstrate that claims of total disability made in retirement applications are not altogether inconsistent with claims that reasonable accommodations would allow him to perform essential functions of his position. Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8).

**[6] Federal Civil Procedure ⚖═2497.1**
170Ak2497.1 Most Cited Cases

Genuine issue of material fact, as to whether police officer was "qualified individual with a disability," precluded summary judgment with respect to that element of officer's prima facie case under ADA and New York State Human Rights Law (NYHRL); record was unclear about essential functions of officer's position, defendants had not cited testimonial evidence to support their contention that certain enumerated physical abilities were absolutely essential, and record was devoid of medical evidence contemporaneous with officer's requests for return to light duty that might shed light on his capabilities. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.; Americans with Disabilities Act of 1990, § 101(8), 42 U.S.C.A. § 12111(8); N.Y.McKinney's Executive Law § 296.

**[7] Civil Rights ⚖═1225(2)**
78k1225(2) Most Cited Cases

Reassignment of disabled employee to vacant light-duty position is "reasonable accommodation" under ADA; however, employer is not obligated to create new light-duty position for disabled employee or make permanent previously temporary light-duty positions. Americans with Disabilities Act of 1990, § 101(9), 42 U.S.C.A. § 12111(9).

**[8] Civil Rights ⚖═1225(3)**
78k1225(3) Most Cited Cases

Police officer's proposed accommodation in form of light-duty assignment was not reasonable, insofar as those positions did not exist in town police department. Americans with Disabilities Act of 1990, §§ 101(9), 102(b)(5)(A), 42 U.S.C.A. §§ 12111(9), 12112(b)(5)(A); N.Y.McKinney's Executive Law § 296.

**[9] Civil Rights ⚖═1243**
78k1243 Most Cited Cases

Under ADA and New York State Human Rights Law (NYHRL), in order to establish prima facie case of retaliation, employee must show that (1) he engaged in activity protected by ADA, (2) employer was aware of this activity, (3) employer took adverse employment action against him, and (4) causal connection exists between alleged adverse action and protected activity. Americans with Disabilities Act of 1990, § 503(a), 42 U.S.C.A. § 12203(a); N.Y.McKinney's Executive Law § 296, subd. 7.

**[10] Civil Rights ⚖═1244**
78k1244 Most Cited Cases

Under ADA and New York State Human Rights Law (NYHRL), employee may prevail on claim for retaliation even when underlying conduct complained of was not in fact unlawful so long as he can establish that he possessed good faith, reasonable belief that underlying challenged actions of employer violated the law. Americans with Disabilities Act of 1990, § 503(a), 42 U.S.C.A. § 12203(a); N.Y.McKinney's Executive Law § 296, subd. 7.

**[11] Civil Rights ⚖═1249(2)**

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 3

78k1249(2) Most Cited Cases

Police officer established prima facie case of retaliation under ADA and New York State Human Rights Law (NYHRL) through evidence his benefits and employment were terminated after he engaged in protected activities of requesting light duty assignments and filing Equal Employment Opportunity Commission (EEOC) complaint. Americans with Disabilities Act of 1990, § 503(a), 42 U.S.C.A. § 12203(a); N.Y.McKinney's Civil Service Law § 71; N.Y.McKinney's Executive Law § 296, subd. 7; N.Y.McKinney's General Municipal Law § 207-c.

[11] Municipal Corporations 185(1)
268k185(1) Most Cited Cases

Police officer established prima facie case of retaliation under ADA and New York State Human Rights Law (NYHRL) through evidence his benefits and employment were terminated after he engaged in protected activities of requesting light duty assignments and filing Equal Employment Opportunity Commission (EEOC) complaint. Americans with Disabilities Act of 1990, § 503(a), 42 U.S.C.A. § 12203(a); N.Y.McKinney's Civil Service Law § 71; N.Y.McKinney's Executive Law § 296, subd. 7; N.Y.McKinney's General Municipal Law § 207-c.

[12] Civil Rights 1113
78k1113 Most Cited Cases

Individual may not be held personally liable under the ADA. Americans with Disabilities Act of 1990, § 2 et seq., 42 U.S.C.A. § 12101 et seq.

[13] Civil Rights 1736
78k1736 Most Cited Cases

Individuals may be held personally liable under New York State Human Rights Law (NYHRL) for actual participation in or aiding and abetting employer's discriminatory conduct. N.Y.McKinney's Executive Law § 296, subd. 6.

[14] Civil Rights 1736
78k1736 Most Cited Cases

Present and former acting police chiefs and present and former town supervisors actually participated in actions giving rise to police officer's claims of retaliation and thus could be held personally liable under New York State Human Rights Law (NYHRL); officer's inquiries about light duty assignments were directed to and handled by chiefs, one of whom participated in adverse employment action by signing and sending letter stating town's intention to terminate officer, former supervisor engaged in adverse action by adopting hearing officer's recommendations and terminating officer's benefits, and present supervisor actually terminated officer's employment. N.Y.McKinney's Civil Service Law § 71; N.Y.McKinney's Executive Law § 296, subd. 6; N.Y.McKinney's General Municipal Law § 207-c.

[14] Municipal Corporations 170
268k170 Most Cited Cases

[14] Municipal Corporations 182
268k182 Most Cited Cases

Present and former acting police chiefs and present and former town supervisors actually participated in actions giving rise to police officer's claims of retaliation and thus could be held personally liable under New York State Human Rights Law (NYHRL); officer's inquiries about light duty assignments were directed to and handled by chiefs, one of whom participated in adverse employment action by signing and sending letter stating town's intention to terminate officer, former supervisor engaged in adverse action by adopting hearing officer's recommendations and terminating officer's benefits, and present supervisor actually terminated officer's employment. N.Y.McKinney's Civil Service Law § 71; N.Y.McKinney's Executive Law § 296, subd. 6; N.Y.McKinney's General Municipal Law § 207-c.

[15] Municipal Corporations 187(11)
268k187(11) Most Cited Cases

Police officer was obligated to repay town benefits received under New York statute governing injuries occurring during course of employment which he improperly collected, from time he refused to perform light-duty work until time supervisor adopted hearing officer's recommendations and concluded that officer had forfeited those benefits. N.Y.McKinney's General Municipal Law § 207-c.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 4

**[16] Federal Civil Procedure** ⚙︎2545
170Ak2545 Most Cited Cases

Only admissible evidence need be considered by trial court in ruling on motion for summary judgment. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[17] Federal Civil Procedure** ⚙︎2545
170Ak2545 Most Cited Cases

Principles governing admissibility of evidence do not change on motion for summary judgment. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.

**[18] Evidence** ⚙︎318(2)
157k318(2) Most Cited Cases

On town's motion for summary judgment on its counterclaim to recoup benefits police officer improperly collected for injury sustained during course of employment, letter relied upon by town to prove amount of damages was inadmissible hearsay; letter was out-of-court statement offered to prove truth of matter asserted and was not subject to any of hearsay exceptions. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.; Fed.Rules Evid.Rules 801(c), 803(8), 807; N.Y.McKinney's General Municipal Law § 207-c.

**[18] Federal Civil Procedure** ⚙︎2545
170Ak2545 Most Cited Cases

On town's motion for summary judgment on its counterclaim to recoup benefits police officer improperly collected for injury sustained during course of employment, letter relied upon by town to prove amount of damages was inadmissible hearsay; letter was out-of-court statement offered to prove truth of matter asserted and was not subject to any of hearsay exceptions. Fed.Rules Civ.Proc.Rule 56, 28 U.S.C.A.; Fed.Rules Evid.Rules 801(c), 803(8), 807; N.Y.McKinney's General Municipal Law § 207-c.

**[19] Federal Civil Procedure** ⚙︎2497.1
170Ak2497.1 Most Cited Cases

Genuine issue of material fact, with respect to amount owed to town, precluded summary judgment on damages portion of New York town's counterclaim against police officer to recoup benefits improperly collected for injury officer sustained during course of employment. Fed.Rules Civ.Proc.Rule 56(c), 28 U.S.C.A.; N.Y.McKinney's General Obligation Law § 207-c.

Jones, Sledzik, Garneau & Nardone, LLP, Scarsdale, NY (Steven T. Sledzik, of Counsel), for plaintiff.

Miranda & Sokoloff, LLP, Mineola, NY (Brian S. Sokoloff, Frank A. Valverde, of Counsel), for defendants.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

*1 Plaintiff Kenneth King brings this action against defendants the Town of Wallkill (the "Town"), an incorporated municipality and: (1) Robert Henneman, the Town's former acting police chief; (2) Thomas Nosworthy, the Town's former supervisor; (3) John Beairsto, another former acting Town police chief; (4) Robert Hertman, the Town's present police chief; and (5) John Ward, present supervisor of the Town. (Complt.¶¶ 1-7.) Henneman, Nosworthy, Beairsto, Hertman and Ward are named in their individual capacities (collectively the "individual defendants"). (Id.) Plaintiff, a former Town police officer, seeks compensatory and punitive damages and attorneys' fees, claiming that defendants: (1) violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. and the New York State Human Rights Law ("NYHRL"), N.Y. EXEC. LAW §§ 293-96, by failing reasonably to accommodate his disability by providing him with light-duty assignments and terminating his N.Y. GEN. MUN. LAW § 207-c benefits; (2) violated the ADA and the NYHRL by retaliating against him because of his complaints; and (3) violated the Fifth and Fourteenth Amendments to the United States Constitution by taking his property without just compensation, a claim brought pursuant to 42 U.S.C. § 1983. [FN1] (Id. ¶¶ 55-60.) Defendants counterclaim for $100,000 because they allege that plaintiff received from the Town disability benefits to which he was not entitled. (Answer ¶¶ 67-74.)

Defendants now move for summary judgment pursuant to FED. R. CIV. P. 56 dismissing counts one and two of plaintiff's Complaint and granting recovery on their counterclaim. Defendants also

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 5

move for summary judgment dismissing plaintiff's claims against the individual defendants, contending that individuals are not subject to liability under the ADA and the NYHRL. For the reasons set forth herein, we grant defendants' motion for summary judgment in part and dismiss count one of plaintiff's Complaint. We deny defendants' motion for summary judgment as to count two of the Complaint. We grant individual defendants' motion for summary judgment dismissing plaintiff's claims pursuant to the ADA, but deny it with respect to plaintiff's NYHRL retaliation claim. With respect to the Town's counterclaim, we grant defendants' motion for summary judgment as to liability, but deny that motion as to damages.

**BACKGROUND**

The Town hired plaintiff as a police officer in December 1989. (Pl. Rule 56.1 Stmt. ¶ 1.) On June 19, 1995, plaintiff was injured in a line-of-duty automobile accident when the patrol car that he was driving first struck a deer that had run into the road and then collided with a tree. [FN2] (Id.; Defs. Rule 56.1 Stmt., Ex. D.) Plaintiff initially was diagnosed with an acute cervical strain; he subsequently developed lower back pain as a result of a lumbar strain and herniated disc that were diagnosed shortly thereafter on June 29, 1995. (Defs. Rule 56.1 Stmt.¶ 11 & Ex. E.)

*2 Plaintiff's pain did not relent and he continued to seek medical treatment from a variety of chiropractors and physicians through 1997. These doctors stated that he was disabled from regular police duties, but that he could perform light desk duties that did not require bending or lifting. (Id. ¶¶ 17-20.) In March 1997, Dr. Mary Godesky, an orthopedic surgeon, completed a questionnaire based on her December 1996 examination of plaintiff and set forth the duties that plaintiff could and could not perform. (Id. ¶¶ 23-24, Ex. M.) Based on his review of this questionnaire and plaintiff's medical records, then-police chief Jon Hansen directed plaintiff to report on April 28, 1997 for a light-duty assignment. (Id. ¶ 26.) Plaintiff did not, however, begin this light-duty assignment, and in June 1997 filed an application for disability retirement that was denied in February 1998. (Id. ¶¶ 26, 28.)

Plaintiff continued to undergo diagnostic and treatment procedures including MRI scans. He ultimately was referred to Dr. John Mitamura, an orthopedic surgeon, in November 1997. (Id. ¶ 33.) Dr. Mitamura diagnosed plaintiff with spinal instability in December 1997 and attempted to treat this condition with braces because plaintiff did not want surgery or injections. (Id. ¶ 34.) Subsequently, Dr. Michael Miller, an orthopedic surgeon, performed an independent medical examination of plaintiff, diagnosed him with L-5/S-1 degenerative disc disease in September 1998 and stated plaintiff was a candidate for spinal fusion surgery. (Id. ¶ 41.) Thereafter, in September 1999, Dr. Mitamura performed back surgery on plaintiff, specifically a laminectomy and fusion at L-5/S-1. (Pl. Rule 56.1 Stmt. ¶ 2; Defs. Rule 56.1 Stmt., Exs. AA, DD.) At that time, Dr. Mitamura instructed plaintiff not to return to work for eighteen to twenty-four months after the surgery. (Pl. Rule 56.1 Stmt. ¶ 2.)

While he was out of work, plaintiff was examined by Dr. Miller several times at the request of the Triad Group, the Town's third-party workers' compensation administrator. (Id. ¶ 3.) On April 18, 2000, Dr. Miller concluded that plaintiff had a "temporary total disability" that was "permanent." (Id.; Defs. Rule 56.1 Stmt., Ex. DD.) Dr. Miller clarified this inconsistency in a supplemental report dated May 3, 2000, [FN3] in which he noted that plaintiff was not capable of working on April 18, 2000 because of his back injury, which rendered him totally disabled at that time. [FN4] (Defs. Rule 56.1 Stmt., Ex. FF.) Dr. Miller explained that plaintiff would always be disabled, but not permanently totally disabled. (Id.) Subsequently, on August 24, 2000, Dr. Miller issued a report (the "August 2000 report") that concluded that plaintiff's disability had improved to "marked, partial disability" with a "fair" prognosis and that plaintiff could return to work. (Pl. Rule 56.1 Stmt. ¶ 3; Defs. Rule 56.1 Stmt., Ex. KK.) However, the report specified that the work should be limited to "sedentary work with standing and walking as needed with lifting up to five pounds." (Defs. Rule 56.1 Stmt., Ex. KK.)

*3 Thereafter, Henneman sent plaintiff a letter dated October 10, 2000 referencing the August 2000 report and directing plaintiff to report to work on October 30, 2000. (Pl. Rule 56.1 Stmt. ¶ 4; Defs. Rule 56.1 Stmt., Ex. LL.) That letter informed plaintiff that he would "be assigned light duty

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 6

consistent with Dr. Miller's report" and that his refusal to appear would be grounds for the termination or discontinuance of the full salary and benefits that he had been collecting pursuant to N.Y. GEN. MUN. LAW § 207-c(1). [FN5] (Defs. Rule 56.1 Stmt. ¶ 9 & Ex. LL.)

Prior to returning to work, plaintiff was examined by Dr. Mitamura, his personal physician. (Pl. Rule 56.1 Stmt. ¶ 6.) Dr. Mitamura drafted a note to the Town describing the physical restrictions caused by plaintiff's disability, which included restrictions on foot patrol, motor vehicle operation, apprehension of suspects, participation in criminal investigations and sitting for more than fifteen minutes at a time. (Id. ¶ 6; Defs. Rule 56.1 Stmt., Ex. NN.) Dr. Mitamura's letter also stated that plaintiff could perform only light duties for at most two to four hours per day. (Id.) Plaintiff's counsel then drafted a letter to Nosworthy dated October 26, 2000, apprising him of Dr. Mitamura's findings and requesting an administrative appeal, pursuant to the police collective bargaining agreement (the "CBA"), of Henneman's decision ordering plaintiff back to work pursuant to N.Y. GEN. MUN. LAW § 207-c(3). [FN6] (Defs. Rule 56.1 Stmt., Ex. MM.)

Plaintiff reported to work at 4:00 p.m. on October 30, 2000 and asked Henneman to inform him of his specific duties. [FN7] (Pl. Rule 56.1 Stmt. ¶ 8.) Henneman informed plaintiff that he did not know what specific duties would be assigned. (Id.) Plaintiff, following the advice of his attorney, then asked for a specific assignment in writing, which Henneman declined to provide. (Id. ¶¶ 9-10.) Henneman then told plaintiff that he would be disciplined if he did not perform work assignments as given. (Id. ¶ 9.) At this time, plaintiff informed Henneman that he required a place to lie down in order to perform light duties, an accommodation that Henneman told plaintiff was not mentioned in Dr. Miller's August 2000 report. (Defs. Rule 56.1 Stmt. ¶ 58.) Plaintiff also informed Henneman that he might need to take pain medication while on duty. (Complt.¶ 24.) According to plaintiff, Henneman did not, however, give plaintiff any work assignment on October 30, and sent him home with instructions to call daily about the availability of light-duty work. (Pl. Rule 56.1 Stmt ¶ 11.) Plaintiff returned to work on October 31 and November 1, 2000, and Henneman again directed him to go home because he had no further information about plaintiff's duties. (Id. ¶¶ 9, 11.)

Thereafter, plaintiff's counsel sent to the Town's attorneys a letter dated November 10, 2000 objecting to Henneman's failure to respond to plaintiff's inquiries about his duties, the significance of plaintiff's continued medication use and the number of hours that he was required to work. (Id. ¶ 13 & Ex. 17.) In response, Henneman sent to plaintiff a letter dated November 17, 2000 stating the Town's intention to terminate plaintiff's § 207-c benefits retroactive to October 30, 2000 for failure to perform light duty as directed and advising plaintiff of his right to appeal pursuant to the CBA. (Pl. Rule 56.1 Stmt. ¶ 13; Defs. Rule 56.1 Stmt., Ex. QQ.) Subsequently, hearings were held on the matter and on October 17, 2001 hearing officer Earle Warren Zaidins issued a decision concluding that plaintiff had refused to perform light duty as required by § 207-c and recommending that the Town terminate plaintiff's benefits in accordance with that statute and the CBA. (Pl. Rule 56.1 Stmt. ¶ 13; Defs. Rule 56.1 Stmt., Ex. PP.) On October 29, 2001, Nosworthy adopted hearing officer Zaidins's recommendations and concluded that plaintiff had forfeited his § 207-c benefits by failing to perform light police duty, such as desk work, that remained within his physical abilities. [FN8] (Defs. Rule 56.1 Stmt., Ex. YY.) In the intervening time between the hearings and hearing officer Zaidins's decision, plaintiff had met with Beairsto in May, June and October 2001 and had asked to return to light- duty work. (Pl. Rule 56.1 Stmt. ¶ 17.) Plaintiff's October 2001 request referred specifically to a "light duty assignment afforded to Officer K. Scheuring [that] is now available." (Id., Ex. 6.)

*4 Shortly after hearing officer Zaidins issued his decision and recommendation, Dr. Miller conducted an independent medical examination at the request of the Triad Group in November 2001 and concluded that plaintiff had a "permanent partial disability" from his injuries. [FN9] (Pl. Rule 56.1 Stmt. ¶ 15.) Plaintiff subsequently had his state workers' compensation case reopened and obtained an order directing the Town to resume his compensation payments in February 2002. (Id. ¶ 16.)

In February 2002, plaintiff's counsel sent a letter to Hertman, the newly installed police chief, and

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 7

requested permission for plaintiff to return to light duty. (*Id.* ¶ 18.) The Town rejected this request in March 2002, stating in a letter by counsel that "Hertman carefully reviewed the Department's personnel needs and determined that the Department does not have an available light-duty assignment for [plaintiff]. In fact, the Department does not currently have any police officers assigned to light-duty police work." (*Id.* ¶ 19; Defs. Rule 56.1 Stmt., Ex. BBB.) Plaintiff filed a complaint with the Equal Employment Opportunity Commission (the "EEOC") shortly thereafter, and received a right to sue letter from that agency in August 2002. (Pl. Rule 56.1 Stmt. ¶ 20.)

In October 2002, Ward informed plaintiff that he had been out of work for one year and the Town intended to terminate his employment in accordance with N.Y. CIV. SERV. LAW § 71 [FN10] following a hearing on the matter. (*Id.* ¶ 21.) A hearing was subsequently held before Ward, who then terminated plaintiff's employment on December 9, 2002 because "there is no duty assignment for a police officer in the Police Department that satisfies the limitations on your abilities articulated by you." (*Id.* ¶ 22; Defs. Rule 56.1 Stmt., Ex. DDD.) Plaintiff had asked for a permanent light-duty position. (*Id.* ¶ 80.) He thought that they existed, and identified two other officers, Dennis Lohr and Joe Perone, who had been assigned light-duty positions. (*Id.*) Perone had worked on light-duty assignment in the evidence room for approximately two years, although plaintiff has acknowledged that Perone's benefits and employment also did not continue indefinitely and he no longer works for the Town. Plaintiff also has admitted that he is not aware of any police officer who ever received a permanent light-duty assignment. (Defs. Rule 56.1 Stmt., Ex. EEE at 179-80.) Plaintiff continues to seek a permanent light-duty position. [FN11] (*Id.*, Ex. EEE at 179.)

We also note that plaintiff has filed multiple applications for disability retirement benefits. His first application, for performance of duty disability retirement benefits in June 1997, was denied because plaintiff did not prove that he was permanently incapacitated. (*Id.* ¶ 33; Defs. Rule 56.1 Stmt., Ex. P.) His second application, for accidental disability benefits, was withdrawn in September 2000. (Pl. Rule 56.1 Stmt. ¶ 34.) Both applications were submitted prior to the filing of the EEOC complaint and the present action. (*Id.* ¶ 35.) Plaintiff filed his third application in February 2003, seeking disability retirement benefits because, as stated on the application form, "I am unable to perform my full duties as a police officer and my employer has refused to allow me to return to duty on a 'light-duty' basis or reasonably accommodate my disability." (*Id.* ¶ 37.)

*5 An amendment to the CBA, effective April 2002, resulted in a pay increase for the police officers that was retroactive to January 1, 1999. (*Id.* ¶ 23.) Plaintiff was affiliated with the Town during the time period covered by the pay increase and he learned of the raise through his police union representative. (*Id.*) Plaintiff then contacted April Shuback, the Town employee responsible for payroll and employee benefits, and confirmed that a check for the retroactive amounts due had been issued to him by the Town. (*Id.*) Shuback did not, however, give plaintiff his check; instead, she gave it to Ward at Ward's direction. (*Id.* ¶ 24.) Ward then refused to give the check to plaintiff. (*Id.*) Plaintiff subsequently received a federal tax W-2 form in the amount of $7,500.58, an amount that included the gross retroactive raise amount of $6,326.40. (*Id.* ¶¶ 25-27.)

## DISCUSSION
### I. *Standard of Review*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 8

L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir.1994).

## II. *ADA and NYHRL Discrimination Claims*

[1][2] Defendants first contend that the Court should grant their motion for summary judgment dismissing plaintiff's discrimination claims under the ADA and the NYHRL because plaintiff cannot establish a prima facie case. (Defs. Mem. Supp. Summ. J. at 5.) To establish a prima facie case of employment discrimination under the ADA or the NYHRL, " 'a plaintiff must show: (1) his employer is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation; [FN12] and (4) he suffered [an] adverse employment action because of his disability.' " *Cameron v. Cmty. Aid For Retarded Children, Inc.,* 335 F.3d 60, 63 (2d Cir.2003) (quoting *Giordano v. City of New York,* 274 F.3d 740, 747 (2d Cir.2001)). Plaintiff's claims under the NYHRL are subject to the same analysis because "there is no difference between the quantum or elements of proof required by the ADA and the NYHRL." *Mohamed v. Marriott, Int'l,* 905 F.Supp. 141, 156 (S.D.N.Y.1995). There is no dispute as to the first two elements in the formulation.

### A. *Whether Plaintiff is a "Qualified Individual with a Disability"*

*6 Defendants first argue that plaintiff cannot establish a prima facie case because he is physically unable to perform the essential duties of a police officer and therefore is not a "qualified individual with a disability" under either statute. (Defs. Mem. Supp. Summ. J. at 5.) Plaintiff claims in response that there is a genuine issue of material fact about plaintiff's medical condition and ability to perform any police work, including light-duty assignments. (Pl. Mem. Opp. Summ. J. at 10-12.)

[3][4] To be a "qualified individual," plaintiff bears the burden of proving that he is qualified to perform the essential functions of a police officer in the Town, with or without reasonable accommodation. *See, e.g.,* 42 U.S.C. § 12111(8); *Querry v. Messar,* 14 F.Supp.2d 437, 443-44 (S.D.N.Y.1998) (Conner, J.). Whether plaintiff's inability to perform certain tasks renders him unable to perform the essential functions of police work in the Town generally requires a fact-specific inquiry. *Sharp v. Abate,* 887 F.Supp. 695, 699 (S.D.N.Y.1995) ("[t]he interpretive guide to Part 1630 of the [ADA] regulations makes clear that the inquiry into whether a particular function is essential is a fact specific exercise to be made on a case by case basis"). An employee incapable of regular attendance is, however, not qualified to perform the essential functions of a given position. *See, e.g., Mazza v. Bratton,* 108 F.Supp.2d 167, 175 (S.D.N.Y.2000) ("An individual is not qualified for his position if he is unable to come to work."), *aff'd,* 9 Fed.Appx. 36 (2d Cir.2001), *cert. denied,* 534 U.S. 887, 122 S.Ct. 199, 151 L.Ed.2d 140 (2001). Whether an employee is qualified is dependent on that employee's condition at the time of the alleged adverse employment action. *See id.* at 175 ("That plaintiff's condition improved following his termination cannot overcome the undisputed evidence from the earlier time period that plaintiff was not qualified to perform the essential functions of his position, and was not able to report for work at all."). Moreover, "[e]vidence of whether a particular function is essential includes, but is not limited to the employer's judgment as to which functions are essential, the written job description, the amount of time spent performing the function, the consequences of not requiring the employee to perform the function, the work experience of past employees in the position, and the current work experience of employees in similar positions." *Sharp,* 887 F.Supp. at 698.

[5][6] We conclude that a genuine issue of material fact exists as to whether plaintiff was a qualified employee at the time of his termination. The record in this case is far from clear about the essential functions of the position of a police officer in the Town. [FN13] The CBA does not contain a job description (Pl. Rule 56.1 Stmt., Ex. 18) and if a formal written job description exists, neither of the parties has seen fit to cite or provide it for the Court's review. Moreover, defendants have not cited testimonial evidence to support the contention that certain enumerated physical abilities are absolutely essential for performance of the position of Town of Wallkill police officer. Finally, the record is devoid of medical evidence contemporaneous with

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

plaintiff's post-October 2001 requests for a return to light duty that might shed light on his capabilities; indeed, the most recent medical reports therein, dated April and May 2001, emphasize in a conclusory manner plaintiff's inability to work as a police officer, but do not link specifically plaintiff's disabilities with enumerated physical requirements of law enforcement work. *See supra* note 9. Accordingly, resolving all inferences in favor of plaintiff, we conclude that there is a genuine issue of material fact precluding summary judgment with respect to the second element of the ADA and NYHRL analysis. [FN14]

### B. *Whether Plaintiff's Proposed Accommodation was Reasonable*

*7 Defendants next contend that plaintiff's request for a light-duty assignment is not reasonable because plaintiff seeks that assignment on a permanent basis and granting that request would require defendants to create a new position, an obligation not imposed by the ADA or the NYHRL. (Defs. Mem. Supp. Summ. J. at 8-9.) Plaintiff, relying primarily on *Howell v. Michelin Tire Corp.,* 860 F.Supp. 1488 (M.D.Ala.1994), argues in response that there is a genuine issue of material fact about whether the Town had available permanent light-duty police positions that it could assign him to. (Pl. Mem. Opp. Summ. J. at 7-8.)

[7] Reassignment of a disabled employee to a vacant light-duty position is well established as a reasonable accommodation under the ADA. *See, e.g., Kees v. Wallenstein,* 973 F.Supp. 1191, 1196 (W.D.Wash.1997), *aff'd,* 161 F.3d 1196 (9th Cir.1998). An employer is not, however, obligated to create a new light-duty position for a disabled employee or make permanent previously temporary light-duty positions. *See, e.g., Dalton v. Subaru-Isuzu Auto., Inc.* 141 F.3d 667, 680 (7th Cir.1998) (concluding that an automobile manufacturer was not required to accommodate permanently disabled employees via assignment to a program that consisted of light-duty positions set aside for temporarily disabled employees); *Kees,* 973 F.Supp. at 1196-97 (relying on jail's standard operating procedures manual and concluding that corrections officers' light-duty assignments were not permanent); *see also Hardy v. Vill. of Piermont,* 923 F.Supp. 604, 610 (S.D.N.Y.1996) (Conner, J.) (concluding that creation of a light-duty police position was not " 'reasonable assistance or job modification by the employer' " pursuant to the Rehabilitation Act). Moreover, lax enforcement of the temporary nature of temporary light-duty assignments does not transform such assignments into permanent positions. *See Kees,* 973 F.Supp. at 1197 (concluding that jail's placement of corrections officers on light-duty status for indefinite periods of time did not alter written policy of providing only temporary light-duty assignments); *Champ v. Balt. County,* 884 F.Supp. 991, 999-1000 (D.Md.1995) (concluding that the police department's failure to enforce a 251 working-day limit for light-duty assignments did not turn them into permanent assignments, despite the fact that the disabled plaintiff remained in one such position for approximately sixteen years), *aff'd,* 91 F.3d 129, 1996 WL 383924 (4th Cir.1996) (unpublished table opinion). A plaintiff who seeks to recover under the ADA for an employer's failure reasonably to accommodate his disability by transferring him to an appropriate vacant light-duty position bears the burdens of production and persuasion of establishing the existence of such a position at the time he sought transfer. *Jackan v. N.Y. State Dep't of Labor,* 205 F.3d 562, 567-68 (2d Cir.), *cert. denied,* 531 U.S. 931, 121 S.Ct. 314, 148 L.Ed.2d 251 (2000).

[8] We conclude that plaintiff's request for a permanent light-duty assignment fails as a matter of law because the record clearly demonstrates that these positions do not exist in the Town's police department. Ward testified at his deposition that the police department has no established permanent or temporary light-duty positions and does not intend to have them in the future even for injured officers. [FN15] (Pl. Rule 56.1 Stmt., Ex. 9 at 19-22.) He also testified that the police department presently is operating seven or eight officers short of its authorized strength. (*Id.* at 22-23.) Hertman, the present police chief, testified at his deposition that the Town has a small police department with very little work available for a police officer who is not on full duty. (Defs. Reply Decl., Ex. C at 32.) In fact, when Hertman took office in March 2002, he relieved Perone of his two-year assignment to full-time light duty in the evidence room because "[w]e had no assignments to give him. Basically, he would sit downstairs in the property room all day." (*Id.* at 34-35.) Indeed, plaintiff himself acknowledged Perone's termination and admitted

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 10

that he is not aware of any Town police officer who had ever received a permanent light-duty position. *See supra* note 11 and accompanying text. Accordingly, based on the undisputed facts, we conclude that the Town has no permanent light-duty police assignments available, and that it is not required under the ADA or NYHRL to accommodate plaintiff by creating such a position for him. [FN16]

*8 Plaintiff's reliance on *Howell* is misplaced because that case is distinguishable. (Pl. Mem. Opp. Summ. J. at 8.) In that case, the disabled plaintiff claimed that his employer violated the ADA by not assigning him to a permanent light-duty position. 860 F.Supp. at 1490. The employer previously had assigned the *Howell* plaintiff to two separate light-duty assignments, each limited by company rules to thirteen weeks. *Id.* The district court concluded that there was a genuine issue of material fact precluding summary judgment because there were at least two other employees whom the company had permitted to remain on light-duty assignments for longer than thirteen weeks. *Id.* at 1492. The plaintiff in *Howell* also produced evidence of vacant permanent positions in the area of the company's plant wherein he had performed his light duty that were being filled by other candidates. *Id.* at 1493. The district court rejected the company's arguments with respect to the actual classification of the two other employees, and concluded that the company nevertheless had "the ability to find new, less strenuous positions for disabled workers, whether or not it formally classifies the work as 'light duty.' " *Id. Howell* is distinguishable from the present case because, in that case there was evidence that the defendant employer had the continuing capability of accommodating other disabled employees besides the plaintiff. In contrast, in the present case, it is undisputed that the Town did not grant to other employees the permanent accommodation requested by plaintiff and did not have even long-term temporary light-duty assignments available. Thus, we grant defendants' motion for summary judgment dismissing the first count of plaintiff's Complaint. [FN17]

### III. *ADA and NYHRL Retaliation Claims*

Defendants next contend that plaintiff's retaliation claims should be dismissed because he cannot establish a prima facie case under the ADA or the NYHRL. (Defs. Mem. Supp. Summ. J. at 13-14.) Plaintiff argues in response that the record reflects the existence of a genuine issue of material fact with respect to his retaliation claim because his benefits and employment were terminated after he engaged in the protected activities of requesting light duty and filing an EEOC complaint. (Pl. Mem. Opp. Summ. J. at 17.)

[9][10] Under the ADA and the NYHRL, "[i]n order to establish a prima facie case of retaliation, [the plaintiff] must show that: (1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius,* 313 F.3d 713, 719 (2d Cir.2002). [FN18] Moreover, we note that a "plaintiff may prevail on a claim for retaliation even when the underlying conduct complained of was not in fact unlawful 'so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.' " *Id.* at 719 (quoting *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.,* 183 F.3d 155, 159 (2d Cir.1999)); *see also Cifra,* 252 F.3d at 218 (stating that "we do not regard ... the ruling that [the plaintiff] did not prove by a preponderance of the evidence that she was the victim of discrimination on the basis of gender, as establishing any fact that would preclude litigation of the issues central to the retaliation claim.").

*9 [11] We conclude that there is a genuine issue of material fact as to plaintiff's retaliation claim, and we deny defendants' motion for summary judgment as to the second count of the Complaint. Defendants' arguments are limited to whether plaintiff has met the *de minimis* evidentiary showing, *see, e.g., Treglia,* 313 F.3d at 719, necessary to establish a prima facie case of retaliation under the ADA and the NYHRL. As to the first element, plaintiff's inquiries about the nature of his October 2000 light duty and subsequent requests to be placed on light duty, filed prior to his EEOC complaint, constitute protected activities. *See id.* at 720 (stating that informal complaints to management constitute protected activities); *Lyman v. City of New York,* No. 01 Civ. 3789, 2003 WL 22171518, at *9 (S.D.N.Y.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 11

Sept.19, 2003) (stating that requests for accommodations are protected activities). [FN19] Defendants do not dispute the satisfaction of the second and third elements, namely that they were aware of plaintiff's conduct and that they took adverse employment actions against plaintiff. (Defs. Mem. Supp. Summ. J. at 13.) Finally, there is sufficient evidence to satisfy the *de minimis* causal connection requirement because: (1) termination of plaintiff's N.Y. GEN. MUN. LAW § 207-c benefits followed his initial requests for explication of his light-duty assignment; and (2) his employment was terminated pursuant to N.Y. CIV. SERV. LAW § 71 in December 2002 after his subsequent requests for a light-duty assignment and August 2002 complaint to the EEOC. *See, e.g., Treglia,* 313 F.3d at 720 (stating that "[w]e have held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation" and noting that "a few months" between the protected conduct and the adverse employment action satisfies the fourth element); *Lyman,* 2003 WL 22171518, at *10 (denying defendants' summary judgment motion and concluding that four months between protected activity and adverse action satisfied the fourth element); *cf. Raniola v. Bratton,* 243 F.3d 610, 625-27 (2d Cir.2001) (concluding that fourteen months between EEOC complaint and employee's termination satisfied the timing element in Title VII retaliation case). Accordingly, we conclude that plaintiff has established a prima facie case of retaliation under the ADA and the NYHRL, and we deny defendants' motion for summary judgment dismissing the second count of the Complaint. [FN20]

**IV.** *Individual Defendants' Liability Under the ADA and the NYHRL*

Defendants, contending that the ADA and the NYHRL do not provide for causes of action against individual, non-employer defendants, also move for summary judgment dismissing the ADA and NYHRL claims against the individual defendants. (Defs. Mem. Supp. Summ. J. at 17.) Plaintiff does not contest defendants' ADA arguments, but does argue in response that persons who actually participate in discriminatory conduct may be held individually liable under the NYHRL. (Pl. Mem. Opp. Summ. J. at 21-22.) Having granted defendants' summary judgment motion on the merits of plaintiff's reasonable accommodations claim, *see supra* Part II, we confine our inquiry herein to the individual defendants' roles with respect to plaintiff's retaliation claim.

**A.** *Individual Defendants' Liability Under the ADA*

*10 [12] We first turn to individual defendants' liability under the ADA. It is well settled that an individual may not be held personally liable under the ADA. *See, e.g., Menes v. CUNY Univ. of N.Y.,* 92 F.Supp.2d 294, 306 (S.D.N.Y.2000) (dismissing ADA and Rehabilitation Act claims against individual defendants in both their individual and official capacities); *see also Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271, 274 (S.D.N.Y.1996) ("To the extent her sixth claim for relief seeks to allege violations of the ADA by the Management Committee and other Cadwalader employees, the claims would be futile because the ADA, like Title VII, does not provide for liability by individual employees."). Accordingly, we grant defendants' motion for summary judgment dismissing plaintiff's retaliation claim brought pursuant to the ADA against the individual defendants.

**B.** *Individual Defendants' Liability Under the NYHRL*

We next turn to the issue of individual defendants' liability under the NYHRL. Defendants, relying on *Trovato v. Air Express Int'l,* 238 A.D.2d 333, 334, 655 N.Y.S.2d 656 (2d Dep't 1997), claim that there is no individual liability under the NYHRL. (Defs. Mem. Supp. Summ. J. at 17.) In the alternative, defendants ask this Court to decline to exercise its supplemental jurisdiction over the individual defendants, stating that plaintiff's claim raises novel or complex issues of state law. (Defs. Reply Mem. Supp. Summ. J. at 19 n. 7.) Plaintiff, relying on *Patrowich v. Chem. Bank,* 63 N.Y.2d 541, 473 N.E.2d 11, 483 N.Y.S.2d 659 (1984) and the NYHRL provision N.Y. EXEC. LAW § 296(6), argues in response that there is individual liability for actual participation in or aiding and abetting an employer's discriminatory conduct. (Pl. Mem. Opp. Summ. J. at 21-22.)

We note at the outset our agreement with defendants' assertion that plaintiff's claims against

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 12

the individual defendants present issues of New York state law that are by no means crystal clear. The confusion arises from *Patrowich,* wherein the New York Court of Appeals held that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on age or sex under New York's Human Rights law." *Patrowich* did not, however, discuss the import of N.Y. EXEC. LAW § 296(6), which provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." Several years later, the district court in the age discrimination case *Wanamaker v. Columbian Rope Co.,* 740 F.Supp. 127, 135-36 (N.D.N.Y.1990), distinguished *Patrowich* by citing § 296(6), and concluding that the plaintiff's allegations in that case "support[ed] the conclusion that defendants aided or abetted the acts which plaintiff claims violated the [NY]HRL." A few years thereafter, in *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1317 (2d Cir.1995), the United States Court of Appeals for the Second Circuit borrowed the logic of *Wanamaker* and held that under the "aiding and abetting" language of § 296(6), "a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NY]HRL."

*11 The New York state courts have not uniformly accepted the Second Circuit's interpretation of state law in *Tomka,* and the two New York Appellate Divisions located within the Southern District of New York have in fact reached divergent conclusions on this issue. *Compare Steadman v. Sinclair,* 223 A.D.2d 392, 393, 636 N.Y.S.2d 325 (1st Dep't 1996) (citing, inter alia, *Tomka* for the proposition that " 'an individual may be held liable for aiding discriminatory conduct' " under the NYHRL (citation omitted)), *with Trovato,* 238 A.D.2d at 334, 655 N.Y.S.2d 656 (acknowledging the contrary conclusions of *Tomka* and *Steadman,* but concluding that "[t]o find a coemployee liable as an aider and abettor would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination."). Moreover, this divergence has yet to be resolved by the New York Court of Appeals. The resulting confusion has caused several district courts to decline to exercise their supplemental jurisdiction over a plaintiff's NYHRL claims. *See Ponticelli v. Zurich Am. Ins. Group,* 16 F.Supp.2d 414, 439-40 (S.D.N.Y.1998) (following *Houston v. Fidelity,* No. 95 Civ. 7764, 1997 WL 97838, at *10 (S.D.N.Y. Mar.6, 1997)); *see also Heinemann v. Howe & Rusling,* 260 F.Supp.2d 592, 596-97 (W.D.N.Y.2003) (citing examples in dicta).

[13] Nevertheless, the majority of the other federal district courts in New York considering the issue have elected to follow the lead of the Second Circuit in *Tomka* and apply its rule of "actual participation" to hold individual defendants personally liable under the NYHRL for discriminatory conduct via § 296(6). *See, e.g., Perks v. Town of Huntington,* 251 F.Supp.2d 1143, 1160-61 (E.D.N.Y.2003); *Jong-Fwu v. Overseas Shipholding Group, Inc.,* No. 00 Civ. 9682, 2002 WL 1929490, at *7 n. 3 (S.D.N.Y. Aug.21, 2002); *Lewis v. Triborough Bridge & Tunnel Auth.,* 77 F.Supp.2d 376, 379 & n. 6 (S.D.N.Y.1999); *Petrosky v. N.Y. State Dep't of Motor Vehicles,* 72 F.Supp.2d 39, 64-65 (N.D.N.Y.1999); *Pell v. Trs. of Columbia Univ.,* No. 97 Civ. 0193, 1998 WL 19989, at *21 (S.D.N.Y. Jan.21, 1998). We deem this approach to be the most prudent because, as noted by Judge Young in the Eastern District, although the Second Circuit's ruling in *Tomka* "has been criticized, it is binding upon this Court." *Perks,* 251 F.Supp.2d at 1160; *see also Petrosky,* 72 F.Supp.2d at 65 (stating that "the most important precedential authority presented is from the Second Circuit as this Court is bound by its decisions of law."). We will, therefore, decline defendants' invitation and will exercise our supplemental jurisdiction to apply the clearly articulated rule of *Tomka* to the facts of the present case. [FN21]

The relevant statutory framework provides an appropriate starting point for our analysis of the present case. N.Y. EXEC. LAW § 296(6), relied on by plaintiff, provides that "[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." The retaliation provision of the NYHRL is N.Y. EXEC. LAW § 296(7), which provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 13

filed a complaint, testified or assisted in any proceeding under this article." These two subsections are read in concert and an individual defendant may be held liable under the NYHRL for actual participation in or aiding and abetting an employer's retaliatory conduct. *See Naftchi v. New York Univ.,* 14 F.Supp.2d 473, 491-92 (S.D.N.Y.1998) (applying § 296(6) to NYHRL retaliation claim and concluding that there was a triable issue of fact as to one defendant who had participated in decisions to deny raises to the plaintiff and to take away his office space); *Steadman,* 223 A.D.2d at 393, 636 N.Y.S.2d 325 (concluding that the defendant had stated a viable NYHRL retaliation counterclaim under § 296(6) when she alleged that the plaintiff brought an action against her at the instigation of the defendant's employer in retaliation for filing an EEOC complaint).

*12 [14] Accordingly, we turn to the facts of the present case in order to determine which of the named defendants actually participated in the actions giving rise to plaintiff's claims of retaliation. *See supra* Part III. With respect to plaintiff's protected activities, namely his inquiries about the nature of his October 2000 light duty and subsequent requests to be placed on light duty, filed prior to his EEOC complaint, we note that plaintiff's inquiries were directed to and handled by Henneman, Beairsto and Hertman. Henneman participated in the adverse employment action by signing and sending the letter stating the Town's intention to terminate plaintiff's N.Y. GEN. MUN. LAW § 207-c benefits constitute protected activities. Nosworthy engaged in adverse action by adopting hearing officer Zaidins's recommendations and terminating plaintiff's benefits. Finally, Ward actually terminated plaintiff's employment pursuant to N.Y. CIV. SERV. LAW § 71. We conclude, therefore, that the record reveals evidence of active participation by all five named individual defendants and deny defendants' motion for summary judgment dismissing plaintiff's NYHRL claims against them.

**V.  *Defendants' Counterclaim to Recoup Wrongfully Received Benefits***

Defendants also move for summary judgment on the Town's counterclaim. Relying primarily on *County of Westchester v. Sheehan,* 292 A.D.2d 486, 741 N.Y.S.2d 244 (2d Dep't 2002), they claim that plaintiff wrongfully received $49,171.22 in N.Y. GEN. MUN. LAW § 207-c benefits, *see supra* notes 5-6, that the Town is entitled to recoup with interest. (Defs. Mem. Supp. Summ. J. at 15-16; Defs. Reply Mem. Supp. Summ. J. at 14.) Plaintiff argues in response that *Sheehan* is distinguishable and that there is in any event a genuine issue of material fact exists about the amount owed, especially in light of his claim that the Town wrongfully withheld his check for the April 2002 retroactive salary increase. [FN22] (Pl. Mem. Opp. Summ. J. at 18-20.) We grant in part defendants' motion for summary judgment on the counterclaim as to liability only. We also conclude, however, that a material issue of fact exists as to the amount of the Town's damages.

We begin with a review of *Sheehan,* which is the controlling case on the liability issue. In that case, the plaintiff-county paid § 207-c benefits to the defendant, a corrections officer who had been punched by a former inmate in the parking lot of a diner over an hour prior to the officer's reporting to work. 292 A.D.2d at 487. The defendant received the benefits for several months before an arbitrator determined that he was not entitled to them because the injury did not occur during the course of his employment. *Id.* Thereafter, the county brought an action to recover those benefits that had already been paid to the defendant. *Id.* The Supreme Court, Westchester County, granted the plaintiff's cross motion for summary judgment as to liability only, and the Appellate Division, Second Department affirmed, concluding that the plaintiff in that case "was unjustly enriched and must repay those benefits." *Id.* In so holding, the court recognized the " 'strong public policy in favor of protecting the public fisc and recovering moneys improperly or illegally paid out.' " *Id.* (quoting *County of Westchester v. Westchester County Corr. Officers Benevolent Ass'n,* 278 A.D.2d 414, 416, 717 N.Y.S.2d 651 (2d Dep't 2000), *leave to appeal denied,* 96 N.Y.2d 708, 725 N.Y.S.2d 638, 749 N.E.2d 207 (2001)).

*13 [15] We conclude that under *Sheehan,* plaintiff is obligated to repay the Town for those § 207-c benefits that he improperly collected from the time that he refused to perform light-duty work on October 30, 2000 until supervisor Nosworthy adopted the recommendations of hearing officer

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Zaidins on October 29, 2001 and concluded that plaintiff had forfeited his § 207-c benefits. Plaintiff, like the corrections officer in *Sheehan,* received benefits to which he was not entitled because of his refusal to perform light- duty work as assigned, an obligation that is a precondition to the receipt of § 207-c benefits. Accordingly, the public policy of the state of New York, as enunciated in *Sheehan* requires that he repay the Town those monies that were improperly paid to him. [FN23] We therefore grant defendants' summary judgment motion as to liability on their counterclaim.

With respect to the amount of damages, defendants first claim that plaintiff owes the Town $49,504.49 plus interest, a sum that they reduce in the Reply Memorandum to $49,171.22 after crediting plaintiff for the value of his accumulated unused compensatory time. (Defs. Mem. Supp. Summ. J. at 15; Defs. Reply Mem. Supp. Summ. J. at 14.) Plaintiff argues in response that the Town has not supported the damages aspect of its counterclaim with admissible evidence, which precludes a complete grant of summary judgment in its favor. (Pl. Mem. Opp. Summ. J. at 18-20.) We note, however, that plaintiff has not provided in his Memorandum detailed arguments about the admissibility of the evidence proffered by defendants in support of the Town's motion.

In support of their counterclaim and the amount of claimed damages, defendants cite only a letter dated July 29, 2002 from the Town's attorney John O'Reilly to plaintiff's attorney Dana Rudikoff. (Defs. Mem. Supp. Summ. J. at 15; Defs. Reply Mem. Supp. Summ. J. at 14, both citing Defs. Rule 56.1 Stmt., Ex. CCC.) In this letter, O'Reilly responded to a previous letter sent by plaintiff's counsel with respect to plaintiff's claim that the Town owed him back pay pursuant to the April 2002 retroactive pay increase. O'Reilly asserted that the Town is entitled to recoup the § 207-c benefits that it paid to plaintiff after October 30, 2000. (Defs. Rule 56.1 Stmt., Ex. CCC at 1.) In that letter, the Town's attorney provided an itemized list of benefits [FN24] received by plaintiff after October 30, 2000 and asserted that plaintiff owes the Town a total of $49,504.49 before certain reductions that were proposed in contemplation of settlement. [FN25] (*Id.* at 1-2.) The letter does not include appended exhibits supporting the figures in the itemized list.

[16][17] It is well settled that "only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment" and that "[t]he principles governing admissibility of evidence do not change on a motion for summary judgment." *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997); *see also, e.g., Wieczorek v. Red Roof Inns, Inc.,* 3 F.Supp.2d 210, 214 (N.D.N.Y.1998) (refusing to consider inadmissible hearsay in support of defendant's summary judgment motion).

*14 [18][19] We conclude that the letter relied upon by the Town is inadmissible hearsay because it is an "out-of-court statement ... offered to prove the truth of the matter asserted" [FN26] and not subject to any of the exceptions set forth in the Federal Rules of Evidence. Even if considered a public record of the Town for purposes of the FED. R. EVID. 803(8) public records exception, the letter was prepared in contemplation of the present litigation and therefore remains inadmissible. *See, e.g., United States v. Stone,* 604 F.2d 922, 925-26 (5th Cir.1979) (stating "[t]his exception for an agency's official records does not apply to [treasury agent's] personal statements prepared solely for purposes of this litigation" because they "are likely to reflect the same lack of trustworthiness that prevents admission of litigation-oriented statements"); *cf. Hynes v. Coughlin,* 79 F.3d 285, 294- 95 (2d Cir.1996) (noting that the litigation-centric purpose of a prison's "use of force" form tends to preclude its admission via the Rule 803(6) business records exception). Moreover, it is inadmissible even under the residual exception of FED. R. CIV. P. 807, which provides:
> A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 15

offer the statement and the particulars of it, including the name and address of the declarant.

Plainly prepared in anticipation of this litigation, the letter does not have "equivalent circumstantial guarantees of trustworthiness" comparable to the 803 and 804 hearsay exceptions. Moreover, the damage figures contained in the letter are not "more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts." *Id.* Provision of and citation to the actual records from which the figures in the letter are derived would be both more probative and would not require unreasonable efforts by defendants. *Cf. Freedman v. Value Health, Inc.,* 135 F.Supp.2d 317, 332 & n. 6 (D.Conn.2001) (concluding that a letter from defendants' attorney providing defendants' loss projections with attached independent auditor's report and schedule was admissible for securities fraud summary judgment motion under Rule 807 because "there is no challenge to its authenticity, it is offered as evidence of a material fact [and] it is more probative on the point for which it is offered than any other evidence which the defendants can procure"), *aff'd,* 34 Fed.Appx. 408 (2d Cir.2002) (unpublished opinion). Accordingly, we conclude that the attorney's letter in the present case constitutes inadmissible hearsay. Inasmuch as plaintiff actively disputes the amount that he owes to the Town because of numerous credits to which he claims entitlement, including the retroactive paycheck withheld in April 2002, [FN27] (Pl. Mem. Opp. Summ. J. at 18-19) we conclude that there is a genuine issue of material fact with respect to the amount owed to the Town and therefore deny defendants' summary judgment motion as to damages on their counterclaim.

## CONCLUSION

*15 For all of the foregoing reasons, we grant defendants' motion for summary judgment in part and dismiss count one of plaintiff's Complaint. We deny defendants' motion for summary judgment as to count two of the Complaint. We grant individual defendants' motion for summary judgment pursuant to the ADA, but deny it as it relates to the NYHRL. With respect to the Town's counterclaim, we grant defendants' motion for summary judgment as to liability, but deny that motion as to damages.

SO ORDERED.

FN1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 1367. It is undisputed that plaintiff has exhausted his administrative remedies and that this matter is properly before this Court. (Complt. ¶ 10; Answer ¶ 10.)

FN2. The 1995 accident was not plaintiff's first line-of-duty injury. In June 1991, plaintiff sustained neck, back and right-side injuries after a suspect rammed plaintiff's police car during a pursuit. (Defs. Rule 56.1 Stmt. ¶ 1.) As a result of the 1991 accident, plaintiff was out of work from June 28 until September 4 of that year. (*Id.*) He also applied for and received workers' compensation benefits pursuant to N.Y. GEN. MUN. LAW § 207-c, *see infra* notes 5-6, in February 1992. (*Id.* ¶ 2.) As a result of continuing shoulder and neck pain, plaintiff underwent a surgical procedure on his right shoulder in November 1994. (*Id.* ¶ 3.) He also applied again for § 207-c benefits in November 1994, but the police chief at that time denied his application. (*Id.* ¶¶ 3-5.)

FN3. Dr. Miller also issued a supplemental report on April 26, 2000 that addressed the impact of plaintiff's shoulder injury sustained in 1991. *See supra* note 2. (Pl. Rule 56.1 Stmt. ¶ 3; Defs. Rule 56.1 Stmt., Ex. EE.) He noted that the pre-existing shoulder injury created a mild, but permanent disability that rendered plaintiff's "overall disability ... materially and substantially greater." (*Id.*)

FN4. Plaintiff also was examined by Dr. John Robbins, a neurosurgeon, several times between 1997 and 2000. (Defs. Rule 56.1 Stmt. ¶¶ 30, 50.) In May 2000, James Coscette, then-acting police chief, asked Dr. Robbins for an opinion as to plaintiff's ability to perform police duties. (*Id.* ¶ 50.) Henneman, who replaced Coscette as acting chief, reiterated that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

request in June 2000. (*Id.*) Dr. Robbins responded to those requests in July 2000 and offered an opinion that "patient [plaintiff] is totally disabled" and could not perform any of the enumerated police tasks, the least strenuous of which included, inter alia, testifying in court, crowd control, evidence handling and storage, records maintenance and office tasks. (*Id.* & Ex. JJ.)

FN5. N.Y. GEN. MUN. LAW § 207-c(1) provides in relevant part: Any ... member of a police force of any county, city of less than one million population, town or village ... who is injured in the performance of his duties or who is taken sick as a result of the performance of his duties so as to necessitate medical or other lawful remedial treatment shall be paid by the municipality by which he is employed the full amount of his regular salary or wages until his disability arising therefrom has ceased, and, in addition such municipality shall be liable for all medical treatment and hospital care necessitated by reason of such injury or illness.

FN6. N.Y. GEN. MUN. LAW § 207-c(3) provides:
If such a policeman is not eligible for or is not granted such accidental disability retirement allowance or retirement for disability incurred in performance of duty allowance or similar accidental disability pension and is nevertheless, in the opinion of such health authorities or physician, unable to perform his regular duties as a result of such injury or sickness but is able, in their opinion, to perform specified types of light police duty, payment of the full amount of regular salary or wages, as provided by subdivision one of this section, shall be discontinued with respect to such policeman if he shall refuse to perform such light police duty if the same is available and offered to him, provided, however, that such light duty shall be consistent with his status as a policeman and shall enable him to continue to be entitled to his regular salary or wages, including increases thereof and fringe benefits, to which he would have been entitled if he were able to perform his regular duties.

FN7. We note that October 30, the day before Halloween, is known informally by the police as "mischief night" because of its customarily high volume of law enforcement activity. (Pl. Rule 56.1 Stmt ¶ 5.)

FN8. The record reveals that plaintiff did not seek further judicial review of this determination via a C.P.L.R. Article 78 proceeding. The Town's counterclaim for the § 207-c benefits paid after plaintiff refused to perform light duty, as amended by the Rule 26(a) disclosure, asserts that plaintiff owes it $47,275.82 plus interest, although defendants have increased that sum to $49,504.49 and $49,171.22 in their moving and reply Memoranda, respectively. (Pl. Rule 56.1 Stmt. ¶ 31; Defs. Mem. Supp. Summ. J. at 15; Defs. Reply Mem. Supp. Summ. J. at 14.) *See also infra* Part V.

FN9. Earlier in 2001, plaintiff had been examined by Drs. Robbins and Mitamura. In April 2001, Dr. Mitamura again diagnosed plaintiff with spinal instability and wrote that plaintiff "is not able to perform[ ] his occupation as a police officer" and that "he has reached his maximum level of improvement following his lumbar spine surgery." (Defs. Rule 56.1 Stmt. ¶ 68.) In May 2001, Dr. Robbins examined plaintiff and concluded that "he is still unable to return to work as a police officer. I feel this would expose him to increased risk given the potential for altercation or other impact or heavy lifting or straining." (*Id.* ¶ 69.)

FN10. N.Y. CIV. SERV. LAW § 71 provides in relevant part:

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 17

Where an employee has been separated from the service by reason of a disability resulting from occupational injury ... as defined in the workmen's compensation law, he or she shall be entitled to a leave of absence for at least one year, unless his or her disability is of such a nature as to permanently incapacitate him or her for the performance of the duties of his or her position.

FN11. Plaintiff made these acknowledgments and admissions at his deposition. (Defs. Rule 56.1 Stmt., Ex. EEE at 179-80.)

FN12. This element is consistent with the ADA's definitions section, which provides in relevant part: The term "qualified individual with a disability" means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job.
42 U.S.C. § 12111(8).

FN13. Defendants argue that plaintiff was physically impaired in his ability to sit, walk and run and therefore could not perform the essential functions of a police officer. (Defs. Mem. Supp. Summ. J. at 7.) In support of their contention, they cite several cases, including *Champ v. Balt. County*, 91 F.3d 129 (4th Cir.1996) (unpublished table opinion), and *Maldonado v. Mun. of Ponce*, 206 F.Supp.2d 198, 203 (D.P.R.2002) that describe the essential functions of police officers in other municipalities. (Defs. Mem. Supp. Summ. J. at 7-8.) These cases are, however, instructive at best in what remains a fact and circumstances- specific inquiry; they are not "precedents" prescribing the essential qualifications for employment as a police officer. *See Sharp*, 887 F.Supp. at 698-99 (describing defendant's argument that correction officers must be able to engage in inmate contact as one of "substantial initial appeal" and holding that an issue of fact existed as to whether inmate supervision was an "essential function" because even "able-bodied correction officers are placed in clerical and administrative positions within the Department.").

FN14. Defendants also cite plaintiff's three separate applications for disability retirement in support of their argument that he is not a qualified employee under the ADA. (Defs. Mem. Supp. Summ. J. at 6.) As plaintiff argues correctly, however, his applications for disability retirement do not necessarily preclude him from establishing a prima facie case under the ADA. (Pl. Mem. Opp. Summ. J. at 13.) A plaintiff who has filed for disability retirement must introduce sufficient evidence to demonstrate that the claims of total disability made in his retirement applications are not altogether inconsistent with his claims that reasonable accommodations would allow him to perform the essential functions of the police officer position. *See Felix v. N.Y. City Transit Auth.*, 154 F.Supp.2d 640, 650-51 (S.D.N.Y.2001) (discussing *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999)), *aff'd*, 324 F.3d 102 (2d Cir.2003). Resolving all inferences in favor of plaintiff in deciding defendants' summary judgment motion, we conclude that the lack of clarity in the record with respect to the essential functions of the Town's police officer position creates a question of fact about whether plaintiff's claims that he could work with reasonable accommodations are inconsistent with the statements of complete disability contained in his retirement applications.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 18

FN15. Ward did not, however, foreclose the possibility of a pregnant female officer being assigned light-duty tasks. (Pl. Rule 56.1 Stmt., Ex. 9 at 22.)

FN16. Plaintiff, pointing to the lack of a written light-duty policy, the light-duty assignments of Officers Lohr and Perone, and the indefinite nature of the initial order from Henneman mandating his return to light- duty work in October 2000, claims that there is a genuine issue of material fact with respect to the existence of permanent light-duty positions in the Town's police department. (Pl. Mem. Opp. Summ. J. at 8.) We disagree with plaintiff's strained reading of the record. As he himself admitted at his deposition, Lohr's light-duty assignment was only temporary, Perone was terminated and no Town police officer has ever received a permanent light- duty position. *See supra* note 11 and accompanying text.

FN17. Accordingly, we need not reach the merits of defendants' proffered legitimate non-discriminatory reasons for terminating plaintiff's employment and not granting him a permanent light-duty position. (Defs. Mem. Supp. Summ. J. at 10-11.)

FN18. Once a plaintiff establishes a prima facie case of retaliation, the claim is evaluated pursuant to the remainder of the familiar burden- shifting framework, wherein
the burden shifts to the defendant to articulate a legitimate, non- retaliatory reason for the challenged employment decision. If a defendant meets this burden, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."
*Treglia,* 313 F.3d at 721 (quoting *Cifra v. Gen. Elec. Co.,* 252 F.3d 205, 216 (2d Cir.2001)).

FN19. Accordingly, we disagree with defendants' argument to the contrary, namely, that plaintiff did not engage in protected conduct until he complained to the EEOC fourteen months after defendants already had commenced termination of his § 207-c benefits. (Defs. Mem. Supp. Summ. J. at 13.)

FN20. Although defendants do not specify their legitimate non- discriminatory reasons for terminating plaintiff's employment as part of their retaliation analysis, *see supra* note 18, we note that other district courts in the Second Circuit have held that N.Y. CIV. SERV. LAW § 71, *see supra* note 10, may serve as a legitimate non-discriminatory reason for a disabled employee's termination. *See Hatter v. Fulton,* No. 92 Civ. 6065, 1997 WL 411623, at *7 (S.D.N.Y. July 21, 1997), *aff'd sub nom., Hatter v. N.Y. City Hous. Auth.,* 165 F.3d 14, 1998 WL 743733 (2d Cir.1998) (unpublished table opinion), *cert. denied,* 528 U.S. 936, 120 S.Ct. 341, 145 L.Ed.2d 267 (1999). Nevertheless, § 71, like other legitimate non-discriminatory reasons for an adverse employment action, may be discredited by a plaintiff's ability to prove that the employer has invoked it as a pretext for impermissible discrimination. *See id.* Thus, § 71 is not a shield for employers that precludes civil rights claims by disabled employees terminated pursuant thereto. *See id.; see also Magee v. Nassau County Med. Ctr.,* 27 F.Supp.2d 154, 162 (E.D.N.Y.1998) ( "As to whether defendant's decision to terminate plaintiff and not rehire her pursuant to the Civil Service Law was in violation of federal civil rights law is a matter of fact that cannot be determined in a motion to dismiss under Rule 12(b)(6)."). Inasmuch as the parties do not address the other two steps in the burden-shifting analysis, we will refrain from combing the record and making this potentially outcome-determinative decision *sua sponte* without the assistance of counsel more familiar with the relevant facts.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Accordingly, whether defendants' legitimate non-discriminatory reasons for terminating plaintiff are a pretext for discrimination is an issue to be decided by a subsequent summary judgment motion or at trial.

FN21. Accordingly, we also decline defendants' invitation to apply the holding of *Trovato,* 238 A.D.2d at 334, 655 N.Y.S.2d 656, wherein the Appellate Division, Second Department acknowledged the contrary conclusion of *Tomka* and concluded that "[t]o find a coemployee liable as an aider and abettor would ignore the statutory and legal authority limiting the parties who may be sued for employment discrimination." Put simply, it is the decisions of the Second *Circuit,* not those of the Second *Department,* that are binding on this Court. We can only hope that the New York Court of Appeals will provide the state and federal courts with definitive guidance on this significant legal question at the next appropriate opportunity, be it on direct appeal from a state court decision or via a certified question from the Second Circuit.

FN22. Plaintiff notes correctly that defendants have not moved for summary judgment on his claim that the Town wrongfully withheld his retroactive pay raise.

FN23. Plaintiff argues that *Sheehan* is inapposite because in the present case, his termination violated the ADA and the NYHRL. (Pl. Mem. Opp. Summ. J. at 18.) We disagree. We concluded as a matter of law in Part II of this Opinion and Order that plaintiff's termination did not violate the "reasonable accommodations" clause of the ADA. Moreover, with respect to the circumstances surrounding the termination of his § 207-c benefits, it already has been determined at an administrative hearing that plaintiff refused to perform light duty as assigned. *See supra* note 8 and accompanying text. This is a factual determination that is entitled to conclusive effect under the doctrine of collateral estoppel because plaintiff had the full and fair opportunity to litigate the issue of his refusal in the quasi-judicial administrative context of the hearing before hearing officer Zaidins. *See, e.g., Locurto v. Giuliani,* 269 F.Supp.2d 368, 381 (S.D.N.Y.2003) (discussing *Univ. of Tenn. v. Elliott,* 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986)); *see also Doe v. Pfrommer,* 148 F.3d 73, 79 (2d Cir.1998) ("Under New York law, issue preclusion (collateral estoppel), applies when the identical issue necessarily must have been decided in the prior action and will be decisive in the present action and the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination."). Accordingly, we leave that determination undisturbed and conclude that plaintiff's refusal to perform light-duty work properly triggered the termination of his § 207-c benefits.

FN24. Specifically, the Town stated that from October 30, 2000 to October 29, 2001, plaintiff received: (1) $38,189.60 in salary and uniform allowance; (2) a $7,691.20 health insurance premium; (3) a $697.20 dental and vision premium; (4) $2,883.25 for the Town's portion of the FICA payment on his salary overpayment; and (5) $43.24 for the Town's portion of the pro-rated pension contribution. (Defs. Rule 56.1 Stmt., Ex. CCC at 1-2.)

FN25. Specifically, the Town proposed to apply $2,228.67 of claimed back pay under the April 2002 amended CBA and $333.37 from plaintiff's unused accumulated compensatory time to offset the $49,504.49 total. (Defs. Rule 56.1 Stmt., Ex. CCC at 2.) After these reductions were applied, the Town stated that $46,942.55 remained for recovery. (*Id.*)

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

2004 WL 291560
--- F.Supp.2d ----
(Cite as: 2004 WL 291560 (S.D.N.Y.))

Page 20

FN26. *Trouble v. Wet Seal, Inc.,* 179 F.Supp.2d 291, 298 (S.D.N.Y.2001) (discussing FED. R. EVID. 801(c)).

FN27. Plaintiff has provided admissible evidence that creates issues of fact with respect to monies owed, namely the withheld April 2002 paycheck for a net amount of $4,489.47 after taxes and deductions from a gross amount of $6,326.40 (Pl. Rule 56.1 Stmt., Ex. 11) and the 2002 W-2 form that the Town provided to plaintiff stating a total of $7,500.58 in wages, tips and other compensation. (*Id.,* Ex. 12.) We need not address plaintiff's entitlement to the April 2002 retroactive pay increase in this Opinion and Order because defendants have not moved and plaintiffs have not cross moved for summary judgment with respect to that claim. Thus, we leave this issue for subsequent consideration at trial or via an appropriate pretrial motion.

2004 WL 291560, --- F.Supp.2d ----, 2004 WL 291560 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works